UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

Mathew Harley et al,
    *Plaintiffs,*

v.

                                CASE NO. 1:20-cv-04664-BMC

Peter S. Kosinski et al,
    *Defendants*.

---

## DEFENDANT RUTH HUGHS' BRIEF IN OPPOSITION TO PLAINTIFFS' REQUEST FOR INJUNCTIVE RELIEF

---

### INTRODUCTION AND BACKGROUND

The 3,000 or so political subdivisions in Texas run general and special elections, while the political parties conduct primary elections. *See Lightbourn v. Cty. of El Paso*, 118 F.3d 421, 428 n.7, 431 (5th Cir. 1997). In particular, local officials are responsible for the implementation of voting by mail. They "have the official ballot prepared," TEX. ELEC. CODE § 52.002, and "provide an official ballot to the applicant," *id.* § 86.001(b). Local officials also receive, process, and count mail ballots returned by voters. *E.g.*, *id.* §§ 86.007, 86.011, 87.0241, 87.041, 101.057(b). And relevant here, local officials are responsible for all of these same voting-by-mail activities relating to overseas voters. *E.g.*, *id.* §§ 101.002, 101.056, 101.057, 101.102.

Additionally, local election officials do not report to Secretary Hughs. They are independently elected or appointed and are not "subject to the Secretary's control." *Jacobson v. Fla. Sec'y of State*, 957 F.3d 1193, 1207 (11th Cir. 2020) (explaining why the actions of county officials could not be attributed to Florida's Secretary of State). The Secretary's status as the "chief election officer" is not "a delegation of authority to care for any breakdown in the election process"

and does not allow her to control local officials' implementation of the Election Code.[1] *Bullock v. Calvert*, 480 S.W.2d 367, 372 (Tex. 1972).

The Plaintiffs in this case are apparently nervous that their mail-in ballots will not be received by local election officials in time for them to be counted in the upcoming general election. Doc. 1 ¶¶ 16-17 (as to the Texas plaintiffs). They therefore seek an order from this Court that forces the state defendants to "simply accept email ballots or secure fax ballots through the Department of Defense." Doc 13-1 p. 1. Such relief is far from simple—it would at a minimum require a change in the State's laws and the coordination with and cooperation of the Department of Defense with each of Texas's 254 counties. But the complexity of the remedy is irrelevant to the basic requirements Plaintiffs must show before they could hope to assert any claims against Secretary Hughs in this Court. Because this Court lacks both personal and subject-matter jurisdiction, Plaintiffs' request must be denied.

---

[1] *See In re Stalder*, 540 S.W.3d 215, 218 n.9 (Tex. App.—Houston [1st Dist.] 2018, no pet.) (expressing doubt that a "party chair lacked the authority to then form and act upon her own ultimate legal judgment" despite "having received the Secretary of State's assistance and advice in response to an inquiry").

TABLE OF CONTENT

INTRODUCTION AND BACKGROUND ................................................................. i

TABLE OF CONTENT ......................................................................................... iii

TABLE OF AUTHORITY ..................................................................................... iv

ARGUMENT AND AUTHORITIES.......................................................................1

   I.    The Court lacks personal jurisdiction over Secretary Hughs and can issue
       no injunctive relief against her. ....................................................................2

   II.   Plaintiffs lack standing to seek any relief from this Court. .............................3

     a.   Plaintiffs have not alleged a concrete and particularized injury—let alone
        an imminent or irreparable harm. .............................................................4

     b.   Plaintiffs' alleged "injuries" cannot be fairly traced to Secretary Hughs
        and Plaintiffs are therefore unlikely to succeed on the merits. ..................5

     c.   Because no relief this Court could order as against Secretary Hughs
        would have any effect, sovereign immunity is not waived. ......................6

     d.   The balance of the equities weighs against injunctive relief..........................7

CONCLUSION......................................................................................................9

TABLE OF AUTHORITY

CASES

*Andino v. Middleton*,
  No. 20A55, 592 U.S. ____ 2020 WL 5887393 (Mem) ............................................................. 8

*Bullock v. Calvert*,
  480 S.W.2d 367 (Tex. 1972) ........................................................................................................ ii

*Burdick*, v. Takushi,
  504 U.S. 428 (1992) ........................................................................................................................ 9

*City of Austin v. Paxton*,
  943 F.3d 993 (5th Cir. 2019) ................................................................................................. 6, 7

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013) ........................................................................................................................ 4

*Clarno v. People Not Politicians Oregon*,
  No. 20A21, -- S. Ct. --, 2020 WL 4589742 (Mem) ................................................................. 8

*Crawford v. Marion Cty. Election Bd.*,
  553 U.S. ........................................................................................................................................... 9

*Ex Parte Young*
  209 U.S. 123 (1908) ........................................................................................................................ 7

*Friends of the Earth, Inc. v. Laidlaw Envt'l. Servs. (TOC), Inc.*,
  528 U.S. 167 (2000) ........................................................................................................................ 3

*Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*,
  763 F.2d 55 (2d Cir. 1985) ........................................................................................................... 2

*In re Stalder*,
  540 S.W.3d 215 (Tex. App.—Houston [1st Dist.] 2018, no pet.) .................................... ii

*Jacobson v. Fla. Sec'y of State*,
  957 F.3d 1193 (11th Cir. 2020) ........................................................................................... i, 6, 7

*Larson v. Domestic & Foreign Commerce Corp.*,
  337 U.S. 682 (1949) ........................................................................................................................ 7

*Lightbourn v. Cty. of El Paso*,
  118 F.3d 421 (5th Cir. 1997) ........................................................................................................ i

*Little v. Reclaim Idaho*,
  No. 20A18, 140 S. Ct. 2616, 2020 WL 4360897 (Mem) .......................... 8

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992) .............................................................. 3, 5, 6

*McMahon v. Fenves*,
  946 F.3d 266 (5th Cir. 2020) ........................................................ 4

*Merrill v. People First of Ala.*, No. 19A1063, -- S. Ct. --,
  2020 WL 360409 (Mem) ............................................................ 8

*Morris v. Livingston*,
  739 F.3d 740 (5th Cir. 2014) ....................................................... 7

*Okpalobi v. Foster*,
  244 F.3d 405 (5th Cir. 2001) ..................................................... 5, 6

*Purcell v. Gonzalez*,
  549 U.S. 1 (2006) ................................................................... 8

*Republican Nat'l Comm. v. Democratic Nat'l Comm.*,
  140 S. Ct. 1205 (2020) ............................................................. 8

*Simon v. E. Kentucky Welfare Rights Org.*,
  426 U.S. 26 (1976) ................................................................. 6

*Tex. Democratic Party v. Abbott*,
  140 S. Ct. 2015 (2020) ............................................................. 8

*Thompson v. Dewine*,
  No. 19A1054, -- S. Ct. --, 2020 WL 3456705 (Mem) .............................. 8

*United Computer Capitol Corp. v. Secure Prod., L.P.*,
  218 F. Supp. 2d 273 (N.D.N.Y. 2002) ............................................. 3

*Yang v. Kosinski*,
  960 F.3d 119 (2d Cir. 2020) ....................................................... 3

STATUTES

TEX. ELEC. CODE § 52.002 ............................................................... i
TEX. ELEC. CODE §§ 86.001(b), 86.007, 86.011, 87.041, 101.057(b) ................... i
TEX. ELEC. CODE §§ 101.002, 101.056, 101.057, 101.102 .............................. i
TEX. ELEC. CODE § 86.004(b) ........................................................... 9
TEX. ELEC. CODE §§ 31.003-005, 86.001, 002(a), .008, .009, .011 ..................... 5
TEX. ELEC. CODE §§ 86.006(a), 101.057(a) ............................................. 5

TEX. ELEC. CODE §§ 87.027(i), 87.041, 87.061 ............................................................ 5

TEX. GOV'T CODE § 22.002(c) ........................................................................................ 7

RULES

FED. R. CIV. P. 65(d)(2) .................................................................................................. 6

N.Y. C.P.L.R. section 301 ............................................................................................... 2

N.Y. C.P.L.R. section 302(a)(1) ..................................................................................... 2

ARGUMENT AND AUTHORITIES

Plaintiffs' claims against Secretary Hughs fail on all fronts. As an initial matter, this Court lacks personal jurisdiction over Secretary Hughs under New York's long-arm statute, which precludes the issuance of any injunctive relief. Secretary Hughs is not domiciled, and conducts no business in, New York. Plaintiffs suggest that all Defendants have "likely" sent or received mail-in ballots through JFK. Doc. 13-1, p. 9. But such a suggestion, a mere surmise, utterly fails as a jurisdictional hook. The Texas Plaintiffs have not alleged that they have suffered the receipt of an undeliverable ballot, from JFK or anywhere else. And there is no evidence at all that their ballots passed through JFK.

Even if the Court did have personal jurisdiction over Secretary Hughs, Plaintiffs wholly lack standing. Plaintiffs have alleged no injury; rather, they express apprehension and skepticism that are no basis for Article III standing. Without a concrete injury in fact to satisfy Article III, Plaintiffs cannot demonstrate the threat of imminent, irreparable harm that could justify injunctive relief.

Additionally, any injuries cannot be traced—fairly or otherwise—to Secretary Hughs, who does not administer Texas elections, and has no control over the operations of domestic or international postal services. As a result, Plaintiffs' alleged injuries cannot be redressed by any order of this Court enjoining her. Plaintiffs therefore lack any likelihood of success on the merits of their claims because they simply have the wrong defendant and, in any event, sovereign immunity bars their claims. Plaintiffs' lack of standing forecloses injunctive relief.

Finally, the balance of the equities weighs against awarding the requested relief. As a matter of law, Plaintiffs have no constitutional right to vote in any manner that they choose where it isn't otherwise provided by law. While voting by email or fax would undoubtedly be convenient

for Plaintiffs, the Constitution does not require it. And even when analyzed under the *Anderson-Burdick* framework, and in light of *Purcell*, it is too late to affect the relief they seek.

I.    **The Court lacks personal jurisdiction over Secretary Hughs and can issue no injunctive relief against her.**

Plaintiffs' New York District Court suit against the Secretary of the State of Texas fails at the outset. This Court lacks personal jurisdiction over the claims against Secretary Hughs, an out-of-state defendant with no links to New York. And without personal jurisdiction over Secretary Hughs, the Court cannot issue the requested injunctive relief. Secretary Hughs hereby incorporates by reference as though set forth fully herein Part I sections A-C of the Brief of Wisconsin Elections Commissioners in Opposition to Preliminary Injunction, filed October 9, 2020 (the "Wisconsin Brief").

In this case, the Court lacks general jurisdiction over Texas defendant Secretary Hughs because she is not "present" in New York. *See Hoffritz for Cutlery, Inc. v. Amajac, Ltd*., 763 F.2d 55, 58 (2d Cir. 1985). She is not domiciled in New York—she is an official of a separate sovereign state. She is not alleged to transact business in New York in a systematic and continuous manner. She is not alleged to be present in New York with any permanence. She is not alleged to have an office in New York, solicit business in New York, or have employees in New York. Therefore, personal jurisdiction over Secretary Hughs is not proper under N.Y. C.P.L.R. section 301.

The Court also lacks specific jurisdiction over Secretary Hughs because Plaintiffs have not alleged any facts—and there are none—that would support a finding that Secretary Hughs transacts business in New York pursuant to N.Y. C.P.L.R. section 302(a)(1). The basis for jurisdiction alleged is that absentee ballots intended for Texas *might* be mailed through one of New York's airports. Doc. 13-1, p. 9. Even if that were true—and there is no evidence at all that indicates it may be—this is exactly the type of "random, fortuitous, or attenuated contact" insufficient to

2

confer jurisdiction. *See United Computer Capitol Corp. v. Secure Prod., L.P.*, 218 F. Supp. 2d 273, 277 (N.D.N.Y. 2002).

Due process considerations also do not support jurisdiction, and the cases Plaintiffs cite in support actually weigh against them as explained in the Wisconsin Brief. Functions of international mailing over which Secretary Hughs exerts no control cannot form a basis for her to reasonably have anticipated litigation in New York State. Because the Court lacks personal jurisdiction over Secretary Hughs, Plaintiffs' claims for injunctive relief should be denied.

**II.      Plaintiffs lack standing to seek any relief from this Court.**

Secretary Hughs hereby incorporates as though set forth fully herein Part III sections A-C of the Wisconsin Brief. To establish standing, a plaintiff must show: (1) an actual or imminent, concrete and particularized "injury-in-fact"; (2) that is fairly traceable to the challenged action of the defendant (causation); and (3) that is likely to be redressed by a favorable decision (redressability). *Friends of the Earth, Inc. v. Laidlaw Envt'l. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000). All three elements are "an indispensable part of the plaintiff's case" and the party seeking to invoke federal jurisdiction bears the burden to establish them. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). Further, Plaintiffs must demonstrate that they are entitled to injunctive relief by showing an irreparable harm, a likelihood of success on the merits, and that the balance of the equities weigh in their favor. *Yang v. Kosinski*, 960 F.3d 119, 127 (2d Cir. 2020).

Here, Plaintiffs cannot establish a concrete and particularized injury that this Court could hope to address. Thus their request for injunctive relief is barred by their lack of standing to pursue any claims against Secretary Hughs. Even if they had sufficiently alleged an injury in fact for purposes of showing irreparable harm, Plaintiffs will not succeed on the merits because they present no evidence at all that Secretary Hughs caused any injury. Moreover, because Secretary

Hughs does not make or enforce Texas election law, sovereign immunity is not waived and any injunctive relief issued against her by the Court would have no effect.

> ### a. Plaintiffs have not alleged a concrete and particularized injury—let alone an imminent or irreparable harm.

The harm the Texas Plaintiffs claim is their "concern that [their] ballot will not be received in time" attributable to the "slowdowns of international mail delivery." Doc. 1 ¶ 16-17. However, fear or apprehension do not amount to a concrete injury. Even sincere, strong feelings about a subject or course of action taken by a government actor do not give a plaintiff a direct and personal stake in litigation. *McMahon v. Fenves*, 946 F.3d 266, 271 (5th Cir. 2020). One of the Texas Plaintiffs "is considering sending it by private courier [at] a significant financial cost." Doc. 1 ¶ 16. But a plaintiff "cannot manufacture standing by choosing to make expenditures based on" an alleged harm that does not itself qualify as an injury in fact. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 402 (2013).

In support of the Application, Plaintiffs attached a declaration from one of the two Texas Plaintiffs who resides in Germany. Doc. 13-10. That declaration amounts to no evidence. It is entirely speculative, not based on Williams's personal knowledge ("I have heard . . ." and "Delay of my ballot is likely to mean that my ballot will not be counted this year" Doc. 13-10 ¶¶ 6, 8) and includes unfounded legal conclusions (because of Secretary Hughs "voters abroad cannot cast a ballot that they can be assured will arrive" Doc. 13-10 ¶ 7). Plaintiffs allege in the Complaint that "there would be no way for an Overseas American in any of these states to request a ballot on the last day their state allows them to and return it by postal mail" Doc. 13-1 p. 3. But Williams has already received his ballot. Doc. 13-10 ¶ 4. Williams does not even allege that he has attempted to mail his ballot yet, let alone that it has not arrived. Plaintiffs have not plausibly alleged a cognizable injury in fact. Without standing, the request for injunctive relief is unsupportable.

### b. Plaintiffs' alleged "injuries" cannot be fairly traced to Secretary Hughs and Plaintiffs are therefore unlikely to succeed on the merits.

Plaintiffs have alleged no impending injury traceable to Secretary Hughs.  In Texas, each of our counties administers its elections. Secretary Hughs does not issue absentee ballots nor collect them upon their return. TEX. ELEC. CODE §§ 31.003-.005, 86.001, .002(a), .008, .009, .011. She does not verify voters' signatures nor count their ballots. TEX. ELEC. CODE §§ 87.027(i), 87.041, 87.061. Nor does she make the Texas laws governing elections—our Legislature does. And the Secretary cannot force local officials to accept ballots through a method that would violate state law. *See Okpalobi v. Foster*, 244 F.3d 405, 427 (5th Cir. 2001) (en banc); TEX. ELEC. CODE §§ 86.006(a), 101.057(a). The Texas Election Code does not currently allow for accepting emailed or faxed absentee ballots from overseas voters like the Texas plaintiffs, and counties would not be bound by an order entered against Secretary Hughs requiring counties to do so.

Plaintiffs' asserted injuries are not "fairly traceable to the challenged action" of Secretary Hughs at all; rather, they are "the result of the independent action of some third party not before the court." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (quotation and alterations omitted). Whether that third party is Germany, Portugal, the USPS, the DOD, the New York Times, or Throckmorton County, Texas, it matters not. Plaintiffs' "unadorned speculation," based solely "upon information and belief" that that their ballots might pass through JFK[2] is far from sufficient to "connect their injury to the challenged actions." *See Simon v. E. Kentucky Welfare Rights Org.*, 426 U.S. 26,  44–45 (1976); Doc. 1 ¶¶ 8-9.

---

[2] Dallas's DFW was the world's tenth-busiest airport in 2019, outranking JFK's position as number 20. And while the undersigned strives at all times to embody humility and deference, for this Court and each of her sister-State codefendants, she cannot resist noting the possibility—however remote—that at least some things really are bigger in Texas.

While Secretary Hughs recognizes the major impact COVID-19 has had worldwide, the existence of a pandemic is insufficient to confer standing or render Texas law unconstitutional. The impact of the statutory scheme on a plaintiff is irrelevant for standing purposes; what matters is whether the named defendants enforce that scheme. *See Okpalobi*, 244 F.3d at 426 (majority op.) (dismissing claims for lack of standing and explaining that courts should not "confuse[] *the statute*'s immediate coercive effect on the plaintiffs with any coercive effect that might be applied by the *defendants*"); *City of Austin v. Paxton*, 943 F.3d 993, 1002 (5th Cir. 2019). Because they cannot be traced to Secretary Hughs, Plaintiffs' purported injuries and unsupported conjecture do not exhibit any likelihood of success on the merits of their claims. Injunctive relief should therefore be denied.

### c. Because no relief this Court could order as against Secretary Hughs would have any effect, sovereign immunity is not waived.

For the reasons described above, any order against the Secretary would not bind local officials—the parties responsible for administering mail-in voting in Texas. Rule 65 provides that a court "order binds only . . . the parties"; their "officers, agents, servants, employees, and attorneys"; and "other persons who are in active concert or participation with" the foregoing. FED. R. CIV. P. 65(d)(2). Texas's local officials do not fit any of those categories, and Plaintiffs provide no contrary argument. But even if the relief would bind local officials, that still would not satisfy Article III. *See Lujan*, 504 U.S. at 560 (requiring traceability to "the defendant"); *Jacobson*, 957 F.3d at 1209 ("If a plaintiff sues the wrong defendant, an order enjoining the correct official who has not been joined as a defendant cannot suddenly make the plaintiff's injury redressable."). Simply put, Secretary Hughs cannot provide the relief that Plaintiffs are seeking.

Plaintiffs therefore cannot overcome Secretary Hughs' sovereign immunity. Plaintiffs acknowledge that *Ex Parte Young* is their only route around sovereign immunity. Doc. 1 ¶ 38.

However, Plaintiffs are incorrect that "an order of the Court could direct them to implement the relief sought." *Id.* Because she neither enforces the mail-in-ballot rules herself, nor controls local officials' enforcement, Secretary Hughs is not a proper *Ex Parte Young* defendant. *See, e.g.*, *Morris v. Livingston*, 739 F.3d 740, 746 (5th Cir. 2014); *City of Austin v. Paxton*, 943 F.3d 993, 1002 (5th Cir. 2019). Plaintiffs' complaint concerns the alleged actions or omissions of local officials who are not parties to this case.

Moreover, the *Ex Parte Young* exception is limited to prohibitory injunctions "prevent[ing] [a state official] from doing that which he has no legal right to do." 209 U.S. 123, 159 (1908). It does not authorize mandatory injunctions directing "affirmative action." *Id.*; *see also Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 691 n.11 (1949). Additionally, under Texas law, only the Texas Supreme Court may issue mandatory injunctive relief against Secretary Hughs, as she is one of the state's six executive officers. TEX. GOV'T CODE § 22.002(c). Because Secretary Hughs retains sovereign immunity and any injunctive relief ordered against her would be without effect, Plaintiffs' Application should be denied.

### III.    The balance of the equities weighs against injunctive relief.

Secretary Hughs hereby incorporates as though set forth fully herein Part III section D and Part IV of Wisconsin Brief. Plaintiffs ask this Court to coerce Secretary Hughs to usurp the power of the Texas Legislature and fundamentally change the way Texas conducts its elections. The election process in Texas is already well underway, and election day itself is less than four weeks away. The balance of the equities strongly disfavors injunctive relief under these circumstances.

Just this year the Supreme Court has already signaled at least six different times that federal courts should refrain from interfering with a State's election rules unless doing so is absolutely necessary. *See, e.g.*, *Andino v. Middleton*, No. 20A55, 592 U.S. ____ 2020 WL 5887393 (Mem) (Oct. 5, 2020) (granting stay of district court's injunction relaxing South Carolina's witness

requirements for absentee voting); *Clarno v. People Not Politicians Oregon*, No. 20A21, -- S. Ct. --, 2020 WL 4589742 (Mem) (Aug. 11, 2020) (granting stay of district court's injunction relaxing Oregon's election procedures); *Little v. Reclaim Idaho*, No. 20A18, 140 S. Ct. 2616, 2020 WL 4360897 (Mem) (Jul. 30, 2020) (granting stay of district court's injunction relaxing Idaho's rule for ballot initiatives); *Merrill v. People First of Ala.*, No. 19A1063, -- S. Ct. --, 2020 WL 360409 (Mem) (Jul. 2, 2020) (granting stay where district court enjoined Alabama's photo identification and witness requirements for absentee voting); *Thompson v. Dewine*, No. 19A1054, -- S. Ct. --, 2020 WL 3456705 (Mem) (June 25, 2020); *Tex. Democratic Party v. Abbott*, 140 S. Ct. 2015 (2020) (denying application to vacate Fifth Circuit's stay of district court's injunction requiring Texas to implement no-excuse absentee voting); *Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 140 S. Ct. 1205, 1208 (2020) (granting stay of district court's injunction requiring Wisconsin to count late postmarked absentee ballots for primary election). The principle that federal courts ordinarily should not alter state election rules too close to the election thrives. *See Purcell v. Gonzales*, 549 U.S. 1 (2006).

Plaintiffs allege that the *existing system* "can be confusing to voters who have to navigate the requirements of their state, rigid timelines, changes in ballot styles, and so on" Doc. 13-1 p. 3. Williams alleges he has had difficulty getting answers to the questions he has, and there have been no changes to the Texas overseas mail-in ballot process for at least five years. Doc. 13-10 ¶ 5. The voter confusion that would result from an eve-of-election change in the rules will undoubtedly compound any such confusion. Plaintiffs have not acted diligently. Counties were required to send out ballots to overseas voters by September 19, 2020. TEX. ELEC. CODE § 86.004(b), and counties have already mailed tens of thousands of ballots of Texas voters. And with the process they seek to change already underway, it is too late for the Court to issue injunctive relief.

CONCLUSION

No one, least of all Secretary Hughs, disputes that "voting is of the most fundamental significance under our constitutional structure." *Burdick*, *v. Takushi*, 504 U.S. 428, 433 (1992) (citations and quotation marks omitted). "It does not follow, however, that the right to vote in any manner and the right to associate for political purposes through the ballot are absolute." *Id.*; *see Crawford v. Marion Cty. Election Bd.*, 553 U.S. at 209 (Scalia, J., concurring in the judgment) ("That the State accommodates some voters by permitting (not requiring) the casting of absentee or provisional ballots, is an indulgence—not a constitutional imperative that falls short of what is required."). But the fact that Plaintiffs cannot email or fax their ballots from abroad does not render any of Texas's election processes constitutionally infirm. Moreover, because this Court lacks personal and subject matter jurisdiction over this despite with respect to Secretary Hughs, she therefore respectfully requests Plaintiffs' Application be denied.

Respectfully submitted.

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

RYAN L. BANGERT
Deputy First Assistant Attorney General

DARREN L. MCCARTY
Deputy Attorney General for Civil Litigation

THOMAS A. ALBRIGHT
Chief for General Litigation Division

*/s/ Tanya Robinson*
TANYA ROBINSON*
Attorney-in-Charge
State Bar No. 24095822

9

Assistant Attorney General
GENERAL LITIGATION DIVISION
OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Phone: 512-936-1162
Fax: 512-320-0667
tanya.robinson@oag.texas.gov

*ATTORNEYS FOR DEFENDANT*
*RUTH HUGHS*

***Pro Hac Vice application forthcoming***

## CERTIFICATE OF SERVICE

I certify that on October 9, 2020 the foregoing document was filed via the Court's CM/ECF system, causing electronic service upon all counsel of record.

*/s/ Tanya Robinson*
TANYA ROBINSON
Assistant Attorney General

10