**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Mathew Harley, et al., | Docket No. 1:20-cv-04664-BMC |
| *Plaintiffs,* | **MEMORANDUM IN SUPPORT OF MOTION TO DISMISS, IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION, AND IN SUPPORT OF MOTION TO SEVER AND TRANSFER** |
| v. | |
| Peter S. Kosinski, et al., | |
| *Defendants.* | |

Michael G. Adams, Secretary of State of the Commonwealth of Kentucky ("Secretary Adams"), and Albert Benjamin Chandler, Chairman of the Kentucky Board of Elections ("Chairman Chandler") (collectively, the "Kentucky Defendants") respectfully submit this Motion to Dismiss for lack of personal jurisdiction, improper venue, and failure to state a claim upon which relief can be granted. Further, the Kentucky Defendants oppose Plaintiffs' Motion for Preliminary Injunction. Finally, in the event that the Court finds that it has jurisdiction, venue and a justiciable claim, the Kentucky Defendants ask the Court to sever this matter and transfer the Kentucky claim to the Eastern District of Kentucky.

# TABLE OF CONTENTS

TABLE OF CONTENTS..................................................................................................i

TABLE OF AUTHORITIES .........................................................................................iii

INTRODUCTION ..........................................................................................................1

FACTS ............................................................................................................................2

ARGUMENT ..................................................................................................................3

I.     Plaintiffs' Complaint should be dismissed because this Court does not have jurisdiction over the Kentucky Defendants and this is the wrong venue ....................................................................................................................3

    A.     This Court does not have personal jurisdiction over the Kentucky Defendants because they have not purposely availed themselves of conducting business in New York ..................................................................3

    B.     The Eastern District of New York is the wrong venue for this action ................................................................................................................6

II.    Plaintiffs are not entitled to a preliminary injunction .................................................7

    A.     Plaintiffs cannot show that they will suffer irreparable harm in the absence of a preliminary injunction ................................................................8

    B.     Plaintiffs are unlikely to succeed on the merits under the *Anderson-Burdick* test, because Plaintiffs' risk of a burden is speculative and outweighed by Kentucky's compelling interests in an efficient and honest election .............................................................................................10

        1.     Kentucky's requirement of a paper absentee ballot is constitutional under the *Anderson-Burdick* framework ....................10

            a.     Roitman has not demonstrated any significant burden to voting ...........................................................................................11

            b.     Kentucky's interests in implementing its current absentee ballot system are "sufficiently weighty" to justify any burden imposed on Roitman ......................................12

                i.     Section 147 of the Kentucky Constitution requires secret ballots.........................................................................13

ii.    Voting by email poses a heightened risk of cyber
fraud ....................................................................................14

iii.   Kentucky is a poor state that cannot waste scarce
resources on people who do not even live in the
Commonwealth ................................................................... 14

C.    The equities weigh against an injunction......................................... 15

III.   Should this Court decline to dismiss Plaintiffs' Complaint, the claims
against the Kentucky Defendants should be severed and transferred to the
Eastern District of Kentucky ...................................................................... 16

A.    If not dismissed, these claims must be severed because each state's
election law is unique.................................................................. 16

B.    Should this Court decline to dismiss Plaintiffs' Complaint, the
claims against the Kentucky Defendants should be transferred to
the Eastern District of Kentucky.................................................20

CONCLUSION.............................................................................................23

# TABLE OF AUTHORITIES

**Case**                                                                                    **Page(s)**

*Anderson v. Celebrezze,* 460 U.S. 780 (1983) ..................................................*passim*

*Andino v. Middleton,* 592 U.S. _ *2 (2020) ......................................................15

*Andrus v. Charlestone Stone Products Co.,* 436 U.S. 604, n.6 (1978) ..................................................................................................6

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany,* 493 F.3d 110 (2d Cir. 2007).........................................16

*Ashcroft v. Iqbal,* 556 U.S. 662 (2008) ..............................................................4

*Banks v. Sergent,* 48 S.W. 149 (Ky. 1898) *rev'd on other grounds* ........................................................................................13

*Barr Rubber Prods. Co. v. Sun Rubber Co.,* 425 F.2d 1114 (2d 1970).............................................................................................18

*Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007) ......................................4

*Block Industries v. DHJ Industries, Inc.,* 495 F. 2d 256 (8th Cir. 1974) ..........................................................................................17

*Burdick v. Takushi,* 504 U.S. 428 (1992)......................................................*passim*

*Burger King Corp. v. Rudzewicz,* 471 U.S. 462 (1985)........................................4

*Chochos v. Kleven (In re Chochos),* 325 B.R. 780 (N.D. Ind. 2005) ............................................................................................18

*Cole v. Nunnelly,* 130 S.W. 972 (Ky. 1910) .....................................................13

*Costello v. Target Corporate Servs.,* 2016 U.S. Dist. LEXIS 74680, *2-3 (E.D.N.Y. 2016) ..............................................................20, 21

*Crawford v. Marion Cty. Election Bd.,* 533 U.S. 181 (2008) .............................9, 10

*Doyle v. Loring,* 107 F.2d 337 (6th Cir. 1939) ...................................................17

*Elsevier, Inc. v. Grossman,* 77 F. Supp. 3d 331 (S.D.N.Y. 2015) ............................................................................................5

*Filmline (Cross-Country) Productions, Inc. v. United Artists Corp.,* 865 F.2d 513 (2d Cir. 1989) ................................................20

*Gardner v. Ray,* 157 S.W. 1147 (Ky. 1913) ......................................................14

*Green Party of Tenn. v. Hargett,* 767 F.3d 533 (6th Cir. 2014) ..........................11

*Green Party v. N.Y. State Bd. of Elections,* 389 F.3d 411 (2d Cir. 2004) ............................................................................................... 11

*Harper v. Virginia State Bd. of Elections,* 383 U.S. 663 (1966) ...................................................................................................... 10

*Hess v. Gray,* 85 F.R.D. 15 (N.D. Ill. 1979) ................................... 19

*Hood ex. Rel. Mississippi v. City of Memphis,* 570 F.3d 625 (5th Cir. 2009) ........................................................................................ 1

*Initiative & Referendum Inst. v. Walker,* 450 F.3d 1082 (10th Cir. 2006) ........................................................................................... 11

*International Shoe Co. v. Washington,* 326 U.S. 310 (1945) ............ 4

*Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.,* 596 F.2d 70 (2d Cir.1979) ........................................................................................ 7

*Jaynes v. Jaynes,* 496 F.2d 9 (1974) ................................................ 6

*Johnson v. Kay,* 860 F.2d 529 (2d Cir. 1988) ................................. 7

*JSG Trading Corp. v. Tray-Wrap, Inc.,* 917 F.2d 75 (2d Cir. 1990) ............................................................................................... 8

*Keweenaw Bay Indian Community v. Michigan,* 11 F.3d 1341 (6th Cir. 1993) ............................................................................ 1

*Lab Verdict v. Lab Equip.,* 436 F. Supp. 3d 1181 (S.D. Ind. 2020) ................................................................................................ 6

*League of Women Voters v. LaRose,* 2020 U.S. Dist. LEXIS 91631 (S.D.Ohio Apr. 3, 2020) at *19 ............................................ 12

*Leger v. Kalitta,* 2018 U.S. Dist. LEXIS 14186 *6 (E.D.N.Y. 2018) .............................................................................................. 3

*Levans v. Delta Airlines, Inc.,* 988 F. Supp. 2d 330 (E.D.N.Y. 2013) ............................................................................. 4

*Major v. Barker,* 35 S.W. 543 (Ky. 1896) ..................................... 13

*McDonald v. Bd. of Election Commissioners of Chicago,* 394 U.S. 802 (1969) .............................................................................. 9

*Molinori v. Bloomberg;* 564 F.3d 587 (2d Cir. 2009) ................... 11

*Moore v. Consol. Edison Co. of N.Y., Inc.,* 409 F.3d 506 (2d Cir. 2005) ........................................................................................ 7

*Nall v. Tinsley,* 54 S.W. 187 (Ky. 1899) ...................................... 13

iv

*Ohio Council 8 Am. Fed'n of State v. Husted,* 814 F.3d 329
(6th Cir. 2016) ................................................................................................11

*POSVEN v. Liberty Mut. Ins. Co.,* 303 F. Supp. 2d 391 n.1,
(S.D.N.Y. 2002) ...........................................................................................4, 5

*Purcell v. Gonzalez,* 549 U.S. 1, (2006) ........................................................15

*Republican Nat'l Commt. v. Democratic Nat'l
Commt.,* __U.S. _, 140 S. Ct. 1205 (2020) ....................................................15

*Rodriguez v. DeBuono,* 175 F.3d 227 (2d Cir. 1999) .....................................8

*Rosemont Enters. v. Random House, Inc.,* 366 F.2d 303 (2d
Cir. 1966) ..........................................................................................................7

*Shelby Advocates for Valid Elections v. Hargett,* 947 F.3d
977, 980 (6th Cir.), *cert. denied,* (2020) ........................................................9

*Telebyte, Inc. v. Kendaco, Inc.,* 105 F. Supp. 2d 131
(E.D.N.Y. 2000) ...............................................................................................5

*Tex. Democratic Party v. Abbott,* 961 F.3d at 389 (th Cir.
2020) ..................................................................................................................9

*Thompson v. Dewine,* 959 F.3d 804 (6th Cir. 2020) ...............................12, 15

*Tough Traveler, Ltd. v. Outbound Prods.,* 60 F.3d 964 (2d
Cir. 1995) ..........................................................................................................8

*United States v. Stamps,* 2018 U.S. Dist. LEXIS 195970 at
*6 (E.D.N.Y. 2018) ...........................................................................................5

*U.S. Fidelity & Guaranty Co. v. Republic Drug Co., Inc.,*
800 F. Supp. 1076 (E.D.N.Y. 1992) .........................................................20, 22

*Widick v. Ralston,* 197 S.W. 2d 261 (Ky. 1946) ...........................................13

*Will v. Mich Dep't of State Police,* 491 U.S. 58 (1989) .................................16

*Winter v. NRDC, Inc.,* 555 U.S. 7 (2008) .....................................................7, 8

*Wyndham Assoc. v. Bintliff,* F.2d 615 (2d Cir. 1968) ...................................19

*Yang v. Kosinski,* 960 F.3d 119 (2d Cir. 2020) ...............................................7

## **Statutes and Regulations**

17 KRS 117.086 (1)(A) ....................................................................................12

28 U.S.C. § 1391, §1391(b), §1391(b)(2) ........................................................ 6

28 U.S.C. § 1404 ..................................................................................... *passim*

31 KAR 4130.1 ....................................................................................... 12

42 U.S.C. § 1983 .................................................................................... 16

42 U.S.C. § 1988, 1988 (b) ................................................................... 16

NY CPLR § 302 ...................................................................................... 4

UOCAVA, 52 U.S.C. 20302 (a)(1) ........................................................ *passim*

## Rules

Fed. R. Civ. P. 4 ..................................................................................... 17

Fed. R. Civ. P. 12 (b)(2) ....................................................................... 5

Fed. R. Civ. P. 19 ................................................................................... 1

Fed R. Civ. P. 20, 20(a)(1) ................................................................... *passim*

Fed. R. Civ. P. 21 ................................................................................... 19

Fed. R. Civ. P. 82 ................................................................................... 17

## Constitutional Provisions

Ky Const., § 147 ..................................................................................... 13

U.S. Const., amend. I .............................................................................. *passim*

U.S. Const., amend. XIV ......................................................................... *passim*

U.S. Const., Art. I, § 4, cl. 1 ................................................................... 12, 16

## Other

https://elect.ky.gov/Resources/Pages/2020GeneralElectionSummary.aspx ......................... 3

https://nl.usembassy.gov/ ....................................................................... 3

https://www.fda.gov/industry/import-basics/international-mail-
facilities#Where_are_the_IMFs_located_ ............................................ 2

## INTRODUCTION

Less than five weeks before the election, Plaintiffs attempt to hale into a Brooklyn Court the Secretary of State of Kentucky and Chair of the Kentucky Board of Elections, based on the speculative worries of one Kentuckian who chooses to live in and vote from the Netherlands.[1] This Court should dismiss this frivolous suit brought in a jurisdiction with which the Kentucky Defendants have no minimum contacts in their official capacity. Secretary Adams and Chairman Chandler have an election to run in the midst of a pandemic; Plaintiffs' requested relief would potentially jeopardize their ability to conduct an already difficult election. Not wanting to waste a good crisis, Plaintiffs' seek to use COVID-19 to achieve email voting – something they apparently cannot win through the democratic process[2]. However, the U.S. Constitution does not require absentee voting (let alone email voting). And Kentucky's Constitution mandates a secret ballot, which Plaintiffs' remedy of faxed and emailed ballots would gut. Neither of the Kentucky Defendants has the authority to provide the relief Plaintiffs demand. They have sued the wrong people in the wrong place for a nonexistent cause of action. Finally, this suit lumps together seven different states with seven different electoral systems. If it is allowed to go forward, it should be severed and transferred.

---

[1] Bizarrely, Plaintiffs sued only the Chairman of the Kentucky Board of Elections rather than its entire Board. Chairman Chandler is only one vote on that Board. At the very least, the other board members are necessary parties, the absence of which requires dismissal. *See, e.g.*, *Keweenaw Bay Indian Community v. Michigan*, 11 F.3d 1341, 1346 (6th Cir. 1993); *Hood ex. Rel. Mississippi v. City of Memphis*, 570 F.3d 625, 628 (5th Cir. 2009); Fed. R. Civ. P. 19. Likewise for the 120 Kentucky County Clerks, independent constitutional officers who do not report to either of the Kentucky Defendants. The injunction Plaintiffs seek would require the Court to order these non-parties (over whom it lacks jurisdiction) to accept electronic ballots.

[2] Plaintiffs' Exhibits to their Motion for Preliminary Injunction make clear that they have wanted electronic ballot return for many years before COVID-19. *See, e.g.*, DN 13-2 ¶¶ 9, 16.

## **FACTS**

The only Plaintiff relevant to the Kentucky Defendants is Jessica Roitman. DN 1 ¶18. The Complaint informs that she is resident of the Netherlands who:

> has voted in U.S. elections by mail in the past. She votes in Kentucky. She has already requested her absentee ballot from the state of Kentucky, [*sic*] she will have to return it by postal mail once she has voted the ballot. She is concerned about her ballot arriving on time because of slowdowns in the international mail. *Id.*

What the Complaint does not say is that Roitman requested her ballot from Fayette County Clerk Don Blevins on August 19, 2020. Exhibit A ¶ 17. The federal statute that governs voting by U.S. citizens living abroad, UOCAVA, 52 U.S.C. 20302 (a)(1), requires states to email ballots to overseas voters. Fayette County clerk Don Blevins sent Roitman's FPCA ballot by *email to her on September 17, 2020. Id* ¶ 17. Roitman received her ballot *forty-seven (47) days* before the election. And her ballot never went through JFK airport (or any airport, for that matter), because it was emailed to her.

Also, Roitman has already voted – she returned her ballot by mail three days after receiving it (September 20, 2020) DN 13-8 ¶ 6. Whether her ballot, when returned by mail, will or has gone through JFK is entirely speculative, because, as Plaintiffs admit, international ballots go through one of nine different postal centers. DN 1 ¶ 10 n.2. Two of those postal centers are in Illinois, closer to Kentucky than JFK. https://www.fda.gov/industry/import-basics/international-mail-facilities#Where_are_the_IMFs_located_ Defendants have no control over where the mail containing the ballot is processed.

The U.S. Embassy in the Netherlands advises American voters that they have three choices on how to return their ballot, if their home state does not permit electronic return. (1) The voter can use the diplomatic pouch. Although Plaintiffs' Complaint alleges that some diplomatic pouches may take several months to reach America, DN 13-2 ¶ 26, the U.S. Embassy in the

Netherlands estimates two weeks. *See* https://nl.usembassy.gov/[3] (2) Alternatively, the voter can use a private expedited carrier: UPS; Federal Express; or DHL. (3) Or the voter can use ordinary postage, as Roitman chose to do. In light of the pandemic and the potential of absentee ballots creating post office delays, Kentucky will count any ballot received by November 6, 2020 so long as it is postmarked by Election Day, November 3, 2020. *See* https://elect.ky.gov/Resources/Pages/2020GeneralElectionSummary.aspx. That extra time gives Roitman 50 days for her ballot to make it back from the Netherlands to Kentucky.

Roitman complains of Secretary Adams's "unwillingness to allow voters to return their voted ballots either by email or facsimile, *even when lobbied to do so.*" DN 13-8 ¶ 5 (emphasis added). In point of fact, Secretary Adams was never "lobbied" by Roitman or anyone else to allow vote by email or fax, except to the extent Plaintiffs are referring to some sort of general press release.

Even if Roitman or other Plaintiffs had "lobbied" Secretary Adams, he does not have the authority to make the change they want. Nor does Chairman Chandler.[4]

## ARGUMENT

I.      **Plaintiffs' Complaint should be dismissed because this Court does not have jurisdiction over the Kentucky Defendants and this is the wrong venue.**

      **A. This Court does not have personal jurisdiction over the Kentucky Defendants because they have not purposely availed themselves of conducting business in New York.**

It is axiomatic that Plaintiffs cannot drag Secretary Adams or Chairman Chandler from Kentucky into a New York court without satisfying the "minimum contacts" requirements of *International Shoe* and its progeny: the exercise of personal jurisdiction must comport with "fair

---

[3] The Court can take judicial notice of this. *See Leger v. Kalitta*, 2018 U.S. Dist. LEXIS 14186 *6 (E.D.N.Y. 2018).

[4] Plaintiffs complain that "upon information and belief" the Governor of Kentucky has not taken "emergency action" to give them what they want. DN 1 ¶ 66. Yet Plaintiffs have not sued the Governor of Kentucky.

play and substantial justice." *See, e.g.*, *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477-78 (1985); *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).[5] The test is whether the Kentucky Defendants have purposefully availed themselves of the privilege of conducting activities or business in New York so that they could reasonably foresee being sued there. Specific personal jurisdiction requires that the "cause of action must arise out of or relate to the *defendant's* contacts with New York." *See, e.g.*, *POSVEN v. Liberty Mut. Ins. Co.*, 303 F. Supp. 2d 391, 397 n.1 (S.D.N.Y. 2002) (emphasis added). Plaintiffs bear the burden of establishing personal jurisdiction. Even though at this juncture the pleadings must be construed in the light most favorable to Plaintiffs, this Court is "*not* bound to accept as true a legal conclusion couched as a factual allegation[.]" *Levans v. Delta Airlines, Inc.*, 988 F. Supp. 2d 330, 334 (E.D.N.Y. 2013) (quoting *Jazini v. Nissan Motor Co., Ltd.*, 148 F.3d 181, 185 (2d Cir. 1998)) (emphasis added). Plaintiffs' allegations also must be plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2008); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 566 (2007). The focus is on Secretary Adams's and Chairman Chandler's conduct – not that of Roitman or third parties such as the U.S. Postal Service – because the "defendant's connection with the forum state cannot result from decisions made by others," *Levans,* 988 F. Supp. 2d at 340 (cleaned up).

Plaintiffs' assertion of jurisdiction rests on "information and belief" that "election officials in each State at issue here sends thousands of ballots through John F. Kennedy International Airport ("JFK") to voters abroad, and thousands of ballots return through JFK." DN 1 at ¶ 8. The first portion of that allegation is flat out false as to the Kentucky Defendants. Fayette County Clerk Don Blevin's office *emailed* Roitman her ballot. Exhibit A ¶ 17. It never went through JFK. It

---

[5] Because Plaintiffs cannot meet the due process requirements for personal jurisdiction, they necessarily fail the stricter requirements of the New York long-arm statute, NY CPLR § 302.

never went through the Eastern District of New York.  The second part of the allegation is speculative. It is fundamentally unfair to subject the Kentucky Defendants to the jurisdiction of New York for contact that has not and may not ever occur.  Minimum contacts does not mean metaphysical contact. Even if Roitman's ballot does pass through JFK, that is "not sufficiently purposeful nor sufficiently related" to her claim to confer jurisdiction because the Kentucky Defendants had nothing to do with it going there. *See POSVEN,* 303 F. Supp. 2d  at 397 n.2 (employee's use of JFK in travel not enough to support *in personam* jurisdiction).

Plaintiffs' conjecture that potential future harm creates minimum contact *now* if an item passes through a jurisdiction would erode personal jurisdiction altogether. Every package sent by Federal Express would subject senders and recipients to personal jurisdiction in Memphis. Likewise for UPS packages passing through Louisville's world hub. Every package or letter carried by truck would subject senders and recipients to personal jurisdiction anywhere the truck happened to roll through en route. This limitless, random exposure to personal jurisdiction is completely contrary to notions of "fair play and substantial justice" under the due process clause. This Court therefore should dismiss the Complaint pursuant to Fed. R. Civ. P. 12 (b)(2).

Plaintiffs' case law is not to the contrary. In cases Plaintiffs cite, personal jurisdiction was fair because the correspondence/mail was sent to New York for the purpose of reaching an individual residing in New York. In other words, courts have found personal jurisdiction by mail contact when the state of New York is intended to be the correspondence's final destination, rather than just another stop along the way.[6]

---

[6] *See, e.g., United States v. Stamps,* 2018 U.S. Dist. LEXIS 195970 at *6 (E.D.N.Y. 2018) (Cogan, J.) ("[H]ere, the allegedly fraudulent mail solicitations not only traveled out of and into the United States through the United States Postal Service International Service Center at JFK airport, *but were delivered to thousands of alleged victims in the Eastern District of New York.*") (emphasis added); *Telebyte, Inc. v. Kendaco, Inc.*, 105 F. Supp. 2d 131, 135 (E.D.N.Y. 2000) ("[Defendant] mailed an advertisement into New York by *sending a sales brochure sent by Kendaco to Joel Kramer, a New York resident* who was then the President of Telebyte.") (emphasis added); *Elsevier, Inc. v. Grossman*, 77 F. Supp. 3d 331, 344 (S.D.N.Y. 2015) ("Moreover, some of the subscriptions alleged

**B.  The Eastern District of New York is the wrong venue for this action.**

Venue can only be proper if the court already has personal jurisdiction. *See Andrus v. Charlestone Stone Products Co.,* 436 U.S. 604, 607 n.6 (1978*); Jaynes v. Jaynes*, 496 F.2d 9, 10 (1974). As set forth above, there is no personal jurisdiction over Secretary Adams or Chairman Chandler. But as with personal jurisdiction, Plaintiffs point to the potential contents of the dead letter bin at JFK as justification for venue. Again, this is speculative; even Plaintiffs acknowledge that JFK is but "one of nine international mail facilities" in the U.S. DN 1 ¶ 8. Perhaps Roitman's ballot will go through JFK. Or it could go through one of the other eight facilities, some of which are closer to Kentucky. It is by no means certain that her ballot will end up in any dead letter bin anywhere. Who knows?

What is known is that no parties to the Kentucky claim are in New York. Roitman is in the Netherlands. Her potential injury (disenfranchisement) will occur, if at all, in the Netherlands. New York has no interest in or connection to a dispute about Kentucky election law. Secretary Adams and Chairman Chandler – the central witnesses to Roitman's claim – are  in Kentucky. Moreover, both Kentucky Defendants are in the midst of administering a presidential election in a pandemic. To force them to litigate on the other side of the country is not just unduly burdensome, it contravenes the public interest, notwithstanding Plaintiffs' endorsements of the convenience of remote hearings. Venue is still required, pandemic or not; Zoom has not repealed 28 U.S.C. § 1391. The Eastern District of New York is the site of Plaintiffs' attorneys and a few Plaintiffs, but that is all. That is not enough to satisfy 28 U.S.C. § 1391 (b) for the Kentucky Defendants.

Plaintiffs claim 28 U.S.C. § 1391 (b)(2) supports venue, alleging that a "a substantial part

---

to be part of the fraudulent scheme were billed to PTI and Grossman, and *were delivered to Grossman's address in New York*.") (emphasis added). *Lab Verdict v. Lab Equip.,* 436 F. Supp. 3d 1181, 1186 (S.D. Ind. 2020) (Defendant "intentionally aimed its conduct at the forum state," where Plaintiff lived, worked and was injured").

of the events or omissions giving rise to their claims occurred in this District." DN 1 ¶ 11. Again, they point to ballots travelling through JFK. However, Roitman's ballot did *not* pass through JFK; it was emailed. And whether it will pass through JFK on the way back is entirely conjecture. As with personal jurisdiction, Plaintiffs' argument proves too much: it would support venue in any of the states through which Roitman's ballot happens to pass.

## II.       Plaintiffs are not entitled to a preliminary injunction.

A preliminary injunction is "an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Moore v. Consol. Edison Co. of N.Y., Inc.*, 409 F.3d 506, 510 (2d Cir. 2005) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)) (internal quotation marks omitted). The standard for the issuance of a preliminary injunction requires a showing of "(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Jackson Dairy, Inc. v. H. P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir. 1979) (internal citations omitted); *see also Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008). One seeking to invoke such stringent relief must establish a clear and compelling legal right based on undisputable facts. *See Rosemont Enters. v. Random House, Inc.*, 366 F.2d 303, 311 (2d Cir. 1966). Plaintiffs have not carried that burden.

Plaintiffs seek a mandatory injunction to force the Kentucky Defendants to do certain things that they are not even authorized to do. *See Yang v. Kosinski*, 960 F.3d 119, 127-28 (2d Cir. 2020). Because of this, the Court must apply a higher standard, and the movant must show a substantial likelihood of success on the merits. *See Johnson v. Kay*, 860 F.2d 529, 540 (2d Cir. 1988). Plaintiffs concede that in order to receive preliminary injunctive relief that will alter the

status quo, as opposed to maintain it, they must show that they are likely to suffer irreparable harm absent such relief and must make a "clear" or "substantial" showing of a likelihood of success on the merits. DN 13-1 ¶ 3.

Irreparable harm is the "single most important prerequisite for the issuance of a preliminary injunction." *Rodriguez v. DeBuono*, 175 F.3d 227, 233-34 (2d Cir. 1999) (internal citations omitted). Thus, "the moving party must first demonstrate that such injury is likely before the other requirements for the issuance of an injunction will be considered." *Id.* at 234. It is not sufficient for a movant to demonstrate merely the *possibility* of irreparable harm; rather an applicant for a preliminary injunction "must show that it *is likely to* suffer irreparable harm if equitable relief is denied." *JSG Trading Corp. v. Tray-Wrap, Inc.*, 917 F.2d 75, 80 (2d Cir. 1990) (emphasis original); *see also Winter*, 555 U.S. at 22. In the absence of such a showing, a motion for a preliminary injunction should be denied. *Id.* Plaintiffs fail on all counts.

### A.     Plaintiffs cannot show that they will suffer irreparable harm in the absence of a preliminary injunction.

As an initial matter, any "presumption of irreparable harm is inoperative if the plaintiff has delayed either in bringing suit or in moving for preliminary injunctive relief." *Tough Traveler, Ltd. v. Outbound Prods.*, 60 F.3d 964, 968 (2d Cir. 1995). "Though such delay may not warrant the denial of ultimate relief, it may, standing alone, . . . preclude the granting of preliminary injunctive relief, because the failure to act sooner undercuts the sense of urgency that ordinarily accompanies a motion for preliminary relief and suggests that there is, in fact, no irreparable injury." *Id.* (cleaned up). Plaintiffs allege that the problem of overseas voters' ballots being rejected has been an ongoing one – "[e]ven without the pandemic and its impacts on voting[.]" DN 13-1 ¶ 2. Thus, plaintiffs can hardly argue that there is any urgency in their application, which could just as easily been made seven months ago (i.e., when most pandemic-related election litigation began) or seven

years ago. Indeed, as the Court noted in its October 7, 2020 hearing, Plaintiffs waited a week after filing their Complaint to move for a preliminary injunction.

Regardless of when Plaintiffs' Motion was or could have been brought, Plaintiffs' alleged harm is speculative at best.[7] Plaintiffs claim that they will, in general, suffer irreparable harm without injunctive relief because their ballots (some having already been cast, such as Roitman from Kentucky) *may* be rejected for arriving too late. Voters are not irreparably harmed merely because they cannot vote using their preferred method: "It does not follow, however, that the right to vote in any manner . . . [is] absolute." *Burdick v. Takushi*, 504 U.S. 428, 433 (1992). The U.S. Constitution only guarantees one viable method of voting; there is no constitutional right to an absentee ballot. *McDonald v. Bd. of Election Commissioners of Chicago*, 394 U.S. 802, 807-09 (1969). Accordingly, when states impose a limitation on absentee voting, but not in-person voting, "[i]t is . . . not the right to vote that is at stake . . . but a claimed right to receive absentee ballots"— which is not a constitutional right at all. *McDonald*, 394 U.S. at 807; *see also Crawford v. Marion Cty. Election Bd.*, 553 U.S. 181, 209 (2008) (Scalia, J., concurring in the judgment) ("That the State accommodates some voters by permitting (not requiring) the casting of absentee or provisional ballots, is an indulgence—not a constitutional imperative that falls short of what is required.").  The same reasoning applies to the state decision on how the absentee ballot must be returned. If there is no constitutional right to an absentee ballot, there can be no constitutional right to an electronic absentee ballot return[8].

The Constitution is not violated "unless . . . the state has 'in fact absolutely prohibited' the plaintiff from voting." *Tex. Democratic Party v. Abbott*, 961 F.3d 389, 404 (5th Cir. 2020) (quoting

---

[7] This absence of imminent harm deprives Plaintiffs of standing. *Shelby Advocates for Valid Elections v. Hargett,* 947 F.3d 977, 980 (6th Cir.) (per curiam), *cert. denied*, (2020).

[8] There could be a federal statutory right to electronic ballot return if Congress amended UOCAVA to so provide. It has not made that policy choice.

*McDonald*, 394 U.S. at 807-11). And permitting Plaintiffs to vote by submitting an absentee ballot, as Kentucky has done here, is the exact opposite of "absolutely prohibit[ing]" them from doing so. *Id*. Plaintiffs, along with every other eligible Kentucky voter, are still able to cast a ballot in the November election under the current laws (and many of the named Plaintiffs have already done so). Accordingly, irreparable harm may not be presumed because there has been no abridgement of the Plaintiffs' right to vote under the First and Fourteenth Amendments.

      **B.**    **Plaintiffs are unlikely to succeed on the merits under the *Anderson-Burdick* test, because Plaintiffs' risk of a burden is speculative and outweighed by Kentucky's compelling interests in an efficient and honest election.**

Kentucky's current absentee voting system, including the requirement of a paper absentee ballot, is reasonable, neutral, and nondiscriminatory. Any alleged burden on Roitman's right to vote is minimal and far outweighed by the Commonwealth of Kentucky's substantial interests.

      **1.**   *Kentucky's requirement of a paper absentee ballot is constitutional under the Anderson-Burdick framework.*

Election cases rest at the intersection of two competing interests—the special protection afforded to the right to vote and the state's authority to regulate the right to vote. *See Harper v. Virginia State Bd. of Elections*, 383 U.S. 663, 670 (1966); *Crawford v. Marion Cty. Election Bd.*, 553 U.S. 181, 203-04 (2008) (Stevens, J., op.) (recognizing that neutral, nondiscriminatory regulation will not be lightly struck down, despite partisan motivations in some lawmakers, so as to avoid frustrating the intent of the people's elected representatives).

A constitutional challenge to an election regulation or procedure generally requires the courts to balance these competing interests under the so-called *Anderson-Burdick* framework, a flexible standard rooted in the Supreme Court cases of *Anderson v. Celebrezze*, 460 U.S. 780 (1983), and *Burdick v. Takushi*, 504 U.S. 428 (1992). Under this three-step framework, courts must: (1) "'consider the character and magnitude of' the plaintiff's alleged injury'"; (2) "'identify

and evaluate the precise interests put forward by the State as justifications for the burden imposed by its rule'"; and (3) "assess the 'legitimacy and strength of each of those interests,' as well as the 'extent to which those interests make it necessary to burden the plaintiff's rights.'" *Green Party of Tenn. v. Hargett*, 767 F.3d 533, 545-46 (6th Cir. 2014) (quoting *Anderson*, 460 U.S. at 789). "Only after weighing all these factors is the reviewing court in a position to decide whether the challenged provision is unconstitutional." *Anderson*, 460 U.S. at 789.[9]

The "rigorousness of [the Court's] inquiry into the propriety of a state election law depends upon the extent to which a challenged regulation burdens First and Fourteenth Amendment rights." *Burdick*, 504 U.S. at 434. When the burden imposed on the right to vote is "severe," the challenged regulation is subject to strict scrutiny and must be narrowly tailored to advance a compelling state interest. *Id*. However, if the regulation is "minimally burdensome and nondiscriminatory," the regulation will be subject to a "less-searching examination closer to rational basis" and will survive if the state can identify "important regulatory interests" to justify it. *Ohio Council 8 Am. Fed'n of State v. Husted*, 814 F.3d 329, 335 (6th Cir. 2016) (citing *Green Party of Tenn. v. Hargett*, 767 F.3d 533, 546 (6th Cir. 2014) and quoting *Burdick*, 504 U.S. at 434).

    a.    **Roitman has not demonstrated any significant burden to voting.**

The Court should apply rational basis review because this case implicates the manner in which to vote – electronic or paper – not the fundamental right to vote itself. This is a case about election mechanics. *See Molinori v. Bloomberg*, 564 F.3d 587 (2d Cir. 2009); *Initiative and Referendum Inst. v. Walker*, 450 F.3d 1082 (10th Cir. 2006) (en banc) (elections mechanics laws

---

[9] In footnote 14 of their Motion, DN 13 at pg. 17, Plaintiffs recognize that when the Plaintiffs' First Amendment claims substantially overlap with their Equal Protection claims, the Court should analyze the Plaintiffs' claims together under *Anderson-Burdick's* balancing test. *See, e.g. Green Party v. N.Y. State Bd. of Elections,* 389 F.3d 411, 419-22 (2d Cir. 2004). Thus, for the sake of efficiency, Defendants will likewise analyze both claims under the *Anderson-Burdick* framework.

do not implicate First Amendment rights and should be reviewed under rational basis standard). However, even if a more stringent standard applies under the *Anderson-Burdick* framework, Roitman's  constitutional claim still fails because even during the pandemic, courts have held that the requirement for returning absentee applications by mail is not a severe burden, despite "delays at the post office or restrictions in place because of the COVID-19 pandemic, resulting in some voters being able to postmark their ballots in time to be counted." *League of Women Voters v. LaRose*, 2020 U.S. Dist. LEXIS 91631 (S.D. Ohio Apr. 3, 2020) at *19.

> **b.   Kentucky's interests in implementing its current absentee ballot system are "sufficiently weighty" to justify any burden imposed on Roitman.**

The U.S. Constitution gives the states considerable latitude to regulate the time, place and manner of elections, unless Congress provides otherwise. U.S. Const. Art. I, § 4, cl. 1. Although UOCAVA requires states to email ballots to overseas voters, it does not require states to accept electronic receipt of voted ballots; that is entirely up to the states, and procedures vary. Kentucky requires the voted ballot to be paper, and only accepts electronic ballots from servicemen; 17 KRS 117.086 (1)(a) ("The voter returning his or her absentee ballot by mail shall mark his or her ballot, seal it in the secrecy envelope, and then seal the outer envelope, and mail it to the county clerk as provided in this chapter."); *see also*  31 KAR 4130.l. Plaintiffs cannot cite any authority for reading the First Amendment or Equal Protection Clause to eviscerate this express delegation to the state legislatures to exercise their authority under the "time, place and manner clause" of Article I, § 4. It is for the Kentucky General Assembly to change the requirement of a paper ballot if it so chooses (or for Congress to take the issue away from the states by amending UOCAVA). *Thompson v. Dewine*, 959 F.3d 804, 806 (6th Cir. 2020). Like many states, Kentucky has not done so. This Court should resist the invitation to rewrite Kentucky's election laws by judicial fiat.

### i.    *Section 147 of the Kentucky Constitution requires secret ballots.*

Section 147 of the Kentucky Constitution provides in part:

> In all elections by persons in a representative capacity, the voting shall be viva voce and made a matter of record; but all elections by the people shall be by secret official ballot, furnished by public authority to the voters at the polls, and marked by each voter in private at the polls, and then and there deposited, or any person absent from the county of his legal residence, or from the state, may be permitted to vote in a manner provided by law. . . . The General Assembly shall pass all necessary laws to enforce this section, and shall provide that persons illiterate, blind, or in any way disabled may have their ballots marked or voted as herein required.

Ky. Const. § 147.

Section 147's secret ballot provision is "mandatory." *Cole v. Nunnelley*, 130 S.W. 972, 974 (Ky. 1910). And a voter's right to cast a secret ballot is "inviolable." *Major v. Barker*, 35 S.W. 543, 544 (Ky. 1896); *see also Banks v. Sergent*, 48 S.W. 149, 151 (Ky. 1898), *rev'd on other grounds by Widick v. Ralston*, 197 S.W.2d 261, 265 (Ky. 1946) ("The secrecy of the ballot is the fundamental idea of all elections, and this is required by the constitution as well as by statute."). The Kentucky Supreme Court has recognized that "the use of any except the *secret official ballots* affects the merits of the election, inasmuch as it is not a fair election, for that the law essentially requires." *Nall v. Tinsley*, 54 S.W. 187, 189 (Ky. 1899) (emphasis original).

The purpose of this constitutional provision is to prevent coercion and protect voter independence. "By compelling the honest man to vote in secrecy, it relieves him, not merely from the grosser forms of intimidation, but from more subtle and perhaps more pernicious coercion of every sort. By thus tending to eradicate corruption, and by giving effect to each man's innermost belief, it secures to the republic what at such a juncture is the thing vitally necessary to its health – a free and honest expression of the convictions of every citizen." *Tinsley*, 54 S.W. at 188 (quoting John Henry Wigmore, THE AUSTRALIAN BALLOT SYSTEM 52 (2d ed. 1889)). In

this regard, "[t]he primary purpose of the secret ballot may, therefore, be taken to be the protection of the voter." *Gardner v. Ray*, 157 S.W. 1147, 1153 (Ky. 1913).

Plaintiffs admit that the remedy they seek would cause "privacy issues". DN 1 ¶ 94. Their cavalier disregard for the sanctity of the private ballot as required by the Kentucky Constitution is quite breathtaking: "To be sure, such [emailed] ballots will not remain private and anonymous but voters who decide to vote by email understand and expressly agree to this trade-off for a guaranteed counted vote transmitted with ease." *Id.* Maybe in the Netherlands, but not in Kentucky.

### ii.    *Voting by email poses a heightened risk of cyber fraud.*

The Kentucky Defendants have submitted substantial evidence that granting Roitman's requested relief less than a month before the election would severely undermine the security, administration and integrity of the election. Exhibit A ¶ 22. Forcing 120 County Clerks to accept electronic ballots could pose disastrous consequences, such as phishing and ransomware attacks, network overloads and ability of local board resources to manage a new procedure, imposed from afar, at the last minute. *See id.*

### iii.    *Kentucky is a poor state that cannot waste scarce resources on people who do not even live in the Commonwealth.*

Plaintiffs requested relief presupposes access to a computer and Wi-Fi or a fax machine – items that many Kentuckians do not have. If the Kentucky Defendants are forced to accept emailed and faxed ballots, there is a real risk that they also will be forced to provide the means to electronically return those ballots, or violate the Equal Protection Clause because typical domestic absentee ballots come with return postage. Exhibit A ¶ 9.

Roitman lives in a sophisticated, first-world country and obviously has access to a computer. But the relief Plaintiffs seek could force Kentucky Defendants to make the same

accommodation to any expat, anywhere in the world, no matter how remote. The burden on the Commonwealth is literally incalculable.

### C.   The equities weigh against an injunction.

The Supreme Court has admonished that courts should not interfere with election procedures on the eve of an election. *See Republican Nat'l Commt. v. Democratic Nat'l Commt.*, __ U.S. __, 140 S. Ct. 1205 (2020); *Andino v. Middleton*, 592 U.S. __, *2 (2020) (Kavenaugh, J. concurring) ("a State legislature's decision either to keep or to make changes to election rules to address COVID-19 ordinarily 'should not be subject to second-guessing by an unelected federal judiciary which lacks the background; competence and expertise to assess public health and is not accountable to the public.'"); *Purcell v.* Gonzalez, 549 U.S. 1, 4-5 (2006) (per curiam).

This election is underway. Voters are returning absentee ballots. Early voting in person begins in Kentucky on October 13, 2020. It is too late to change procedures without causing chaos. An injunction here therefore would cause unjustifiable harm to third parties and the public interest. First, this Court would have to order 120 non-party Kentucky County Clerks – over whom it does not have jurisdiction – to accept electronic ballots. Second, the Kentucky Defendants have adduced evidence that implementing electronic ballot receipt (after the election has started) would pose a risk to the Commonwealth's elections-related systems from foreign and domestic hackers. Exhibit A ¶ 10; *see also Thompson*, 959 F.3d at 804, 812 ("it may well be that the new [electronic based] methods…will prove workable. But they may also pose serious security concerns and other, as yet unrealized, problems. So the decision to drastically alter Ohio's election procedures must rest with the Ohio Secretary of State and other elected officials, not the courts.") Considering the security risks involved and the timing of the election, implementing a new procedure to permit email or fax ballot delivery would create the risk of problems that could jeopardize the efficiency and even the

15

legitimacy of the election results. Third, the Kentucky constitution's requirement of a private ballot would be violated. That violates fundamental tenets of federalism.

Against the Commonwealth's compelling interests, Roitman – who chose to live in the Netherlands – offers only a hypothetical risk of disenfranchisement, and her desire to be free from worry and a "guaranteed counted vote transmitted with ease." DN 1 ¶94. There is no constitutional right to be free from worry about COVID-19 and the mail. There is no constitutional right to transmit one's vote "with ease." The equities clearly weigh in favor of the Kentucky Defendants.

Even if Plaintiffs could establish a constitutional violation, they would not be entitled to attorneys' fees. The Kentucky Defendants acting in their official capacities are not "persons" within the meaning of 42 U.S.C. § 1983. *See Will v. Mich Dep't of State Police*, 491 U.S. 58, 71 (1989). Plaintiffs request the fees under 42 U.S.C. § 1988, but that statute limits the award of fees to litigants who prevail on specific statutes, none of which Plaintiffs have invoked. *See* 42 U.S.C. § 1988 (b); *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany,* 493 F.3d 110, 114 (2d Cir. 2007).

**III.    Should this Court decline to dismiss Plaintiffs' Complaint, the claims against the Kentucky Defendants should be severed and transferred to the Eastern District of Kentucky.**

**A.    If not dismissed, these claims must be severed because each state's election law is unique.**

Article I, § 4 of the United States Constitution provides that "The Times, Places and Manner of holding Elections of Senators and Representatives, shall be prescribed in each state by the legislature thereof[]" although Congress may "make or alter" such rules. U.S. Const. Art. I § 4 cl. 1. It is a matter of federalism and separation of powers. As a result, there is considerable variety in how states administer elections. Some allow absentee voting for all; others limit absentee voting to particular situations. This is also true for how states choose to receive voted ballots from

overseas voters. That is the state's sovereign prerogative under the U.S. Constitution.

Although the seven states in this suit choose not to receive electronic ballots, Plaintiffs gloss over the reality that they are sovereign jurisdictions, in different parts of the country, with their own electoral systems that vary in how they allocate power and responsibilities for the administration of elections. Plaintiffs request a one-size-fits-all injunction for states that are not, in any sense one size. Plaintiffs' claims against each of the seven states involve multiple permutations of facts and law. There is no judicial economy for keeping these Defendants together. Quite the contrary, Plaintiffs would have this Court ignore the text of the Constitution to implement by judicial fiat their preferred method of voting across a broad swath of America.

Plaintiffs attempt to portray this suit as raising just one issue of law that predominates across the states: the desire to return their ballots electronically. However, the Complaint is internally contradictory on that point because it notes numerous instances where the procedures, laws and regulations of the seven Defendant states differ. *See, e.g.*, DN 13-3 ¶¶ 9, 19; DN 13-2 ¶ 29, 31.

In response to this Court's Show Cause Order, Plaintiffs' October 2, 2020 letter addressed the issue of whether this action should be broken into separate actions. Plaintiffs cite Rule 20 of the Federal Rules of Civil Procedure, regarding permissive joinder of parties, to support their position that all Defendants are properly joined.

First, it should be noted that pursuant to Rule 82, the permissive joinder rule can only be invoked where personal jurisdiction exists under Rule 4 and in a district where venue is otherwise proper. *See also Block Industries v. DHJ Industries, Inc.*, 495 F.2d 256, 259 (8th Cir. 1974) (citing *Mississippi Publishing Corp. v. Murphree*, 326 U.S. 438 (1946)) and *Doyle v. Loring*, 107 F.2d 337, 340 (6th Cir. 1939). Because there is no personal jurisdiction over the Kentucky Defendants

and this venue is improper, Rule 20 does not apply.

If the Court finds that jurisdiction and venue have been established, Rule 20 still does not support consolidation of the Plaintiffs' claims against various officials in their home states into a single action.  Rule 20(a)(1) addresses the joinder of plaintiffs, whereas (a)(2) addresses joinder of defendants.  Both subsections of the rule have similar requirements: (1) that a right to relief is being asserted "jointly, severally, or in the alternative"; (2) that the claims arise "out of the same transaction, occurrence, or series of transactions or occurrences; and (3) a "question of law or fact" common to all defendants or plaintiffs "will arise in the action."  "Rule 20(a)…allows a plaintiff to bring a single proceeding against multiple defendants 'if there is asserted against them jointly, severally, or in the alternative, any right to relief'" arising from the same transaction/occurrence or series of transactions/occurrences. *Chochos v. Kleven (In re Chochos)*, 325 B.R. 780, 784-85 (N.D. Ind. 2005). Notably, joinder is not mandated simply because the requirements of this Rule are met. Instead, the trial court has sound discretion to determine whether to allow such a joinder. *Barr Rubber Prods. Co. v. Sun Rubber Co.*, 425 F.2d 1114, 1127 (2d Cir. 1970).

Plaintiffs acknowledge that "the laws of seven different States are technically at issue[.]" DE 12, ¶ 1. However, Plaintiffs suggest that the real factual issues in this case are the pandemic and the slowdown of mail, including ballots, both inside and outside the United States. But to establish a constitutional claim against the Kentucky Defendants (or any other state official), it must be shown that the Defendant engaged in conduct that violated a Plaintiff's constitutional rights. All of the Kentucky Defendants' election-related conduct occurred in Kentucky. Exhibit A ¶ 7. The real "transaction" or "occurrence" at issue here is whether Kentucky's overseas voting framework, implemented by Kentucky's election officials, has deprived Roitman of constitutional rights. The same is true of the other Plaintiffs, all of whom are alleging that their home State's

flawed voting process threatens to impede their right to vote. The facts applicable to each Plaintiff's claim will be specific to their state of residence, and analysis of the claim will turn almost entirely on an analysis of each state's statutory and regulatory framework for overseas voting. Undoubtedly, this framework will vary from state-to-state. There is not, therefore, a common "transaction" or "occurrence" from which the various Plaintiffs' claims arise.

Even if joinder would be permissible under Rule 20, this Court can (and should) grant a severance under Rule 21, which permits this Court to "sever any claim against a party."  Under this Rule, courts are permitted to sever and transfer any claim, even if joinder was proper, so long as there are "other sufficient reasons" warranting severance. *Hess v. Gray*, 85 F.R.D. 15, 22 (N.D. Ill. 1979). "[W]here the administration of justice would be materially advanced by severance and transfer, a district court may properly sever the claims" for the purpose of transferring some claims to another jurisdiction. *Wyndham Assoc. v. Bintliff*, 398 F.2d 615, 618 (2d Cir. 1968).

Severance and transfer of the claim against the Kentucky Defendants to the Eastern District of Kentucky is warranted under these circumstances. None of the New York resident parties have a claim against the Kentucky Defendants. None of the claims raised by the New York residents rely on facts related to the Kentucky Defendants' conduct, or on Kentucky law. Instead, the only claim against them – raised by a Kentucky Plaintiff – relies entirely upon an interpretation of Kentucky law and an assessment of whether that law violates Roitman's constitutional rights. Simply put, the administration of justice is better served by severing the claims and separating this single action into multiple actions. And, for the reasons stated below, the action against the Kentucky Defendants should be transferred to the Eastern District of Kentucky.

**B.      Should this Court decline to dismiss Plaintiffs' Complaint, the claim against the Kentucky Defendants should be transferred to the Eastern District of Kentucky.**

Even if this action could properly be filed in the Eastern District of New York, the claim against the Kentucky Defendants should be transferred to the Eastern District of Kentucky under 28 U.S.C. §1404. Subsection (a) of that statute provides that a district court may transfer a civil action to another district where it may have been brought "[f]or the convenience of parties and witnesses" and "in the interest of justice[.]" The statute gives this Court the power to grant a transfer upon a lesser showing of inconvenience than is required under the doctrine of *forum non conveniens*. *U.S. Fidelity & Guaranty Co. v. Republic Drug Co., Inc.*, 800 F. Supp. 1076, 1080 (E.D.N.Y. 1992) (internal citations omitted). The decision of whether to transfer a case to another district "is left to the sound discretion of the district court." *Filmline (Cross-Country) Productions, Inc. v. United Artists Corp.*, 865 F.2d 513, 520 (2d Cir. 1989).

When determining whether to transfer a case pursuant to 28 U.S.C. §1404, the court considers: (1) the plaintiff's choice of forum; (2) the convenience of witnesses, (3) the location of relevant documents and ease of access to sources of proof; (4) the convenience of the parties; (5) the locus of operative facts; (6) the availability of process to compel attendance of unwilling any witnesses; and (7) the relative means of the parties. *Costello v. Target Corporate Servs.*, 2016 U.S. Dist. LEXIS 74680, *2-3 (E.D.N.Y. 2016) (quoting *New York Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 112 (2d Cir. 2010)). "Courts also look to judicial economy, the interest of justice, and the 'comparative familiarity of each district with the governing law.'" *Costello* at *3 (quoting *CYI, Inc. v. Ja-Ru, Inc.*, 913 F. Supp. 2d 16, 19 (S.D.N.Y. 2012)); *see also U.S. Fidelity & Guaranty Co.*, 800 F. Supp. at 1080. The court's evaluation of the interest of justice is "based on an assessment of the totality of material circumstances." *U.S. Fidelity & Guaranty Co.*, 800 F.

Supp. at 1080.

As this Court has noted, the weight to be given to a plaintiff's choice of forum "will be doubly reduced" if the plaintiff is not a resident of that forum and the operative facts did not occur in the chosen forum. *Costello* at *3 (internal citations omitted). Here, Plaintiffs are United States citizens living at various locations overseas. Two plaintiffs purportedly vote in New York, the other named Plaintiffs vote in Ohio, Pennsylvania, Texas, Kentucky, Wisconsin and Georgia. Only a Kentucky resident could conceivably assert a claim against the Kentucky Defendants, meaning that no Plaintiff asserting a claim against Secretary Adams and Chairman Chandler is a resident of the forum state.

Further, the majority of the operative facts surrounding the Kentucky claim occurred in Kentucky. At issue is Kentucky's statutory and regulatory framework for overseas voting, as well as the way in which that framework is executed. The only connection this case has to New York is that a Kentucky absentee ballot *might* travel through the Eastern District of New York on the way from Roitman. The Kentucky Defendants have no control over anything that happens in New York. Whatever the situation is at JFK, they did not cause it and cannot fix it. So there is no evidence in New York that can be relevant to Roitman's claim against them. Not only is this link tenuous, but it is of no relevance to the ultimate issue in this case, which is whether Kentucky's statutory and regulatory framework is constitutional as applied.

The Court must also consider the convenience to the parties and witnesses. As previously noted, no party with claims involving the Kentucky Defendants lives in New York. Any witnesses for the defense would also be located in Kentucky.  The only persons for whom a New York forum is convenient are Plaintiffs lawyers. However, 28 U.S.C. §1404 "is not designed to accommodate or even consider the convenience of the lawyers." *Costello* at *6.

There are two additional factors that weigh in favor of a transfer to the Eastern District of Kentucky: the availability of process to compel attendance of any unwilling witnesses and the Eastern District of Kentucky's familiarity with applicable state law. Any witnesses on the issues relevant to the claims against the Kentucky Defendants would almost certainly reside in Kentucky, thus making it easier for Kentucky's federal courts to compel their attendance if necessary. More importantly, Kentucky's federal courts are already familiar with analyzing Kentucky state election laws and processes. These factors weigh heavily in favor of a transfer of venue.

To determine whether the "interest of justice" supports a venue change, this Court must consider the totality of the circumstances. *U.S. Fidelity & Guaranty Co.*, 800 F. Supp. at 1080. With respect to the claims against the Kentucky Defendants, all parties and witnesses are in Kentucky and Kentucky state law is being analyzed. The only link to New York—the possibility of ballots traveling through the state – is not a sufficient reason to keep venue in this District, especially because the Kentucky Plaintiff does not live in this District. Therefore, should this Court conclude that Plaintiff could properly bring this action in this District, the Court should exercise its discretion to transfer this case to the Eastern District of Kentucky.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs' Motion for Preliminary Injunction should be denied, and their Complaint dismissed with prejudice. In the alternative, this Court should sever the action and transfer the Kentucky claim to the Eastern District of Kentucky.

Respectfully Submitted,

/s/ R. Kent Westberry
R. Kent Westberry
Bridget M. Bush
Landrum & Shouse, LLP
1900 West Main Street, Suite 1900
Louisville, KY 40202
(502)589-7616
kwestberry@landrumshouse.com
bbush@landrumshouse.com
*Counsel for Secretary Michael Adams;*
*admitted pro hac vice*

/s/ Taylor Austin Brown
Taylor Austin Brown
Kentucky State Board of Elections
140 Walnut Street
Frankfort, KY 40601
TaylorA.Brown@ky.gov
*Counsel for Defendant Albert Benjamin*
*Chandler; application for pro hac vice*
*forthcoming*