# EXHIBIT A

Declaration of Jared Dearing,
Executive Director of the Kentucky State
Board of Elections

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Mathew Harley, et al., | |
| *Plaintiffs,* | |
| v. | |
| Peter S. Kosinski, et al., | |
| *Defendants.* | |

Docket No. 1:20-cv-04664-BMC

**DECLARATION OF JARED DEARING ON BEHALF OF THE KENTUCKY DEFENDANTS ALBERT BENJAMIN CHANDLER, CHAIRMAN OF KENTUCKY BOARD OF ELECTIONS, AND MICHAEL G. ADAMS, KENTUCKY SECRETARY OF STATE**

Pursuant to 28 U.S.C. §1746, the undersigned, Jared Dearing, makes the following declaration, on behalf of Defendants Albert Benjamin Chandler, Chairman of Kentucky Board of Elections, and Michael G. Adams, Kentucky Secretary of State, under penalty of perjury under the laws of the United States of America, that the facts contained herein are true and correct and based upon my personal knowledge:

1. My name is Jared Dearing.

2. I am currently the Executive Director of the Kentucky State Board of Elections and have served in that role since 2017.

3. I currently serve as Secretary on the Board of Directors for the National Association of State Election Directors.

4.  I am currently a member of the United States Election Assistance Commission Standards Board which is the governing board that provides guidelines and standards for various election systems utilized throughout the United States.

5.  I presently sit on the Board of the Electronic Registration Information Center (E.R.I.C.), a non-profit organization with the sole mission of assisting states to improve the accuracy of America's voter rolls and increase access to voter registration for all eligible citizens.

6.  In my role as Executive Director of the State Board of Elections, I work closely with Secretary of State Adams and Chairman Chandler.

7.  I can say with certainty that they perform their duties exclusively in the Commonwealth of Kentucky, and have no contact with the Eastern District of New York or New York State in their official capacities.

8.  The 2020 General Election is currently underway in Kentucky, with over 600,000 voters having already requested an absentee ballot – nearly 145,000 of which have been returned to the 120 County Clerks who are tasked under Kentucky law with the administration of elections.

9.  These returned ballots have been sent through the mail-in envelopes carrying postage pre-paid by the state and/or placed in secured ballot drop-boxes by voters; Kentucky does not allow for the electronic return of any ballots.

10.  Without security controls, training, and resource implementation, electronic receipt of ballots would expose Kentucky's electoral systems to the risk of cyber-attacks from both foreign and domestic actors.

11.  Kentucky's County Clerks have long been trained by the State Board of Elections not to open unsolicited emails purporting to be electronic ballots due to the digital security threats that email attachments and embedded links pose as avenues for phishing, malware, and ransomware.

12.  The receipt of ballots through email also forces election officials to take into account the issues of attestation and nonrepudiation when sent through the public internet without security controls.

13.  To safely and securely introduce new electronic technologies into an election system takes months of analysis, implementation, and training.  To add a new technology in the middle of an ongoing election is a notion that is unattainable, not only because of the obvious time constraints and security concerns from the information-technology perspective, but because of the fact that such a haphazard addition would produce a non-uniform election, which from an administrative perspective strikes at the ultimate goal of conducting a free and fair contest with equal access for all voters.

14.  Kentucky currently uses an electronic technology known as the "Voter Registration System" or "VRS," which is a tool available to Kentucky's election officials, including those at the State Board of Elections and all of the Commonwealth's 120 County Clerks.

15.  The VRS gives election officials throughout the state an intranet-based tool kit that allows them to, amongst other things, register voters, issue and track absentee and FPCA ballots, and otherwise keep records of the voting history of all registered voters in the state.

16.  The VRS is a system that has taken many years to develop and is continually being refined by a team of engineers employed by the State Board of Elections who ensure that the system

stays robust in defense against the daily attempts from foreign and domestic bad actors to electronically undermine it.

17.  Using the VRS, I am aware that Plaintiff Jessica Roitman requested an absentee ballot from Fayette County Clerk Don Blevins by means of an FPCA on August 19, 2020.  Further, I also am aware through the VRS that Clerk Blevins' office emailed Ms. Roitman her absentee ballot on September 17, 2020.

18.  At this juncture, it would all but be impossible for Kentucky to establish a new electronic election system to allow voters, whether they be military and overseas voters like Ms. Roitman, or the hundreds of thousands of voters stateside who have received absentee ballots, the ability to return a ballot through email due to the immense security risk it would create.

19.  Such a system, unlike the VRS, which took years to develop and is continually refined by an information-technologies staff that is presently stretched thin as a result of the COVID-19 pandemic, would inherently have to rely on the public internet and public email.  A reliance on public email over public internet in critical and sensitive electoral processes introduces complexities that impact the core information security principles of risk management, confidentiality, and integrity.

20.  A hasty change to Kentucky's electoral system to force the acceptance of email attachments that may or may not be legitimate ballots would produce a dependence on what would be email attachments originating from outside the organization of the state's existing electoral structure – a major risk in an area of critical infrastructure such as elections.

21.  A forced sudden reliance on public internet and email without appropriate controls would also put the confidentiality of Kentucky voters at risk as emails traversing the public internet

must pass through external email servers without encryption, leaving sensitive data open to the possibility that it could be intercepted by unauthorized individuals and exposed.

22.  Given that public email over the public internet travels across external mail servers and public networks, the opportunity for a message to be intercepted and altered is inherent.  Without technologies in place that would take more time than is afforded in this election cycle to implement, such as digital signatures or file hashing, the integrity of a ballot cannot be validated to ensure that the ballot is received as it was sent without alteration, a fact that would serve to undermine the entirety of Kentucky's electoral processes.

23.  Kentucky's election officials are already strained to capacity given the adaptations the state has had to make as a result of the COVID-19 pandemic.  Any change to the process by which the general election is conducted that is implemented now will only increase the risk of failure for the entire system.   It is not only impractical, it is impossible to stand up a new system of any validity in the few days left remaining before November 3 without causing very real harm and/or damage to the Commonwealth's overall election infrastructure.


Pursuant to 28 U.S.C. §1746, I declare under penalties of perjury under the laws of the United States of America that the foregoing Declaration is true and correct to the best of my knowledge and belief and that such facts are made based on my personal knowledge.


Executed on October 9, 2020.                          _____
                                                                        Jared Dearing