IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

MATHEW HARLEY, et al.,

      Plaintiffs,

      v.                            Case No. 1:20-CV-4664-BMC

PETER S. KOSINSKI, in his official capacity
as a Commissioner of the New York
State Board of Elections, et al.,

      Defendants.

## BRIEF OF WISCONSIN ELECTIONS COMMISSIONERS
## IN OPPOSITION TO PRELIMINARY INJUNCTION

JOSHUA L. KAUL
Attorney General of Wisconsin


GABE JOHNSON-KARP*
Assistant Attorney General
State Bar #1084731

Attorneys for Defendants
Wisconsin Elections Commissioners

Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 267-8904
(608) 294-2907 (Fax)
johnsonkarpg@doj.state.wi.us

*admitted pro hac vice*

**TABLE OF CONTENTS**

Page

INTRODUCTION .................................................................................................................1

BACKGROUND ..................................................................................................................2

ARGUMENT........................................................................................................................4

I.   The claims against Wisconsin officials should be dismissed for
     lack of personal jurisdiction. ..............................................................................5

     A.   This Court lacks jurisdiction under New York's long-arm
          statute.........................................................................................................5

     B.   In addition, jurisdiction would be improper as a matter of
          due process.................................................................................................9

     C.   Plaintiffs' jurisdictional argument does not come to terms
          with the applicable statutory and due process standards. ........................10

II.  Plaintiffs'   claims   about   Wisconsin   law   are
     nonjusticiable: Von Holzen's ballot has been received in
     Wisconsin, so any claim is moot, and she lacks standing to sue the
     Wisconsin Commissioners .................................................................................14

     A.   Plaintiff Von Holzen's claim is moot because her ballot for
          the upcoming election has been received in Wisconsin. .........................14

     B.   Plaintiff Von Holzen has failed to show injury-in-fact to
          support standing. ......................................................................................16

III. Plaintiffs fail to satisfy any of the elements to support a preliminary
     injunction as to Wisconsin's overseas-voting law .............................................18

     A.   Legal   standards   governing   mandatory   preliminary
          injunctive relief. ......................................................................................18

     B.   Wisconsin's overseas voting law imposes no threat of
          irreparable harm since the only Wisconsin voter has
          already voted and there is no evidence that Wisconsin's
          law threatens any other voter. ..................................................................19

C.    Plaintiffs are not likely to succeed on their *Anderson/Burdick* claim against the Wisconsin defendants .....................20

    1.    Legal principles governing First Amendment claims under *Anderson/Burdick* balancing..................................21

    2.    Wisconsin's absentee-voting procedures were recently approved by the Seventh Circuit, and otherwise easily pass constitutional muster.................................23

    3.    Plaintiffs offer nothing that establishes any burden from Wisconsin's law, and do not address the important interests served by Wisconsin's overseas-absentee voting laws.......................................27

D.    The balance of equities, public interest, and the *Purcell* principle further counsel against a preliminary injunction .......................29

IV.    Plaintiffs abandon their equal-protection claim on preliminary-injunction briefing, and that claim should be dismissed as to Wisconsin since Wisconsin's law mandates equal treatment between overseas and stateside absentee voters..................................32

CONCLUSION...............................................................................................................34

## TABLE OF AUTHORITIES

**Cases**

*Arizona Libertarian Party v. Reagan*,
798 F.3d 723 (9th Cir. 2015) ........................................................................................25

*Asahi Metal Industry Co. v. Superior Court of California*,
480 U.S. 102 (1987) ......................................................................................................12

*Ball v. Metallurgie Hoboken-Overpelt, S.A.*,
902 F.2d 194 (2d Cir. 1990) ...........................................................................................6

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*,
171 F.3d 779 (2d Cir. 1999) ...........................................................................................5

*Burdick v. Takushi*,
504 U.S. 428 (1992) ................................................................................... 21, 22, 23, 28

*Bush v. Gore*,
531 U.S. 98 (2000) ........................................................................................................33

*Charles Schwab Corp. v. Bank of Am. Corp.*,
883 F.3d 68 (2d Cir. 2018) .............................................................................................5

*Cheung v. Youth Orchestra Found. of Buffalo, Inc.*,
No. CIV-88-984E, 1988 WL 125193 (W.D.N.Y. Nov. 18, 1988) .................................. 14, 15

*Chloe v. Queen Bee of Beverly Hills, LLC*,
616 F.3d 158 (2d Cir. 2010) ...................................................................................5, 9, 10

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013) ............................................................................................ 17, 17–18

*Computer Assocs. Int'l, Inc. v. Altai, Inc.*,
126 F.3d 365 (2d Cir. 1997) .......................................................................................9, 10

*Crawford v. Marion Cty. Election Bd.*,
553 U.S. 181 (2008) ......................................................................................................22

*Dekom v. New York*,
No. 12-CV-1318-JS/ARL, 2013 WL 3095010 (E.D.N.Y. June 18, 2013) ...........................27

*Dexter 345 Inc. v. Cuomo*,
663 F.3d 59 (2d Cir. 2011) ............................................................................................20

*Elsevier, Inc. v. Grossman*,
77 F. Supp. 3d 331 (S.D.N.Y. 2015) ...........................................................................12, 13

*Exxon Mobil Corp. v. Schneiderman*,
  316 F. Supp. 3d 679 (S.D.N.Y. 2018).................................................................................13

*Faiveley Transport Malmo AB v. Wabtec Corp.*,
  559 F.3d 110 (2d Cir. 2009) .......................................................................................19, 20

*Frank v. Forest Cty.*,
  336 F.3d 570 (7th Cir. 2003) ...............................................................................................25

*Frank v. Walker*,
  768 F.3d 744 (7th Cir. 2014) ..........................................................................................23, 26

*Gallagher v. New York State Bd. of Elections*,
  No. 20 CIV. 5504-AT, 2020 WL 4496849 (S.D.N.Y. Aug. 3, 2020) ...................................28

*Grand River Enter. Six Nations, Ltd. v. Pryor*,
  481 F.3d 60 (2d Cir. 2007) ..................................................................................................19

*Green Party of New York State v. New York State Bd. of Elections*,
  389 F.3d 411 (2d Cir. 2004) ................................................................................................32

*Griffin v. Roupas*,
  385 F.3d 1128 (7th Cir. 2004) .......................................................................................22, 28

*Gucci Am., Inc. v. Weixing Li*,
  768 F.3d 122 (2d Cir. 2014) ..................................................................................................6

*Hayden v. Paterson*,
  594 F.3d 150 (2d Cir. 2010) ................................................................................................33

*Hewes v. Alabama Sec'y of State*,
  No. 19-CV-9158-LJL, 2020 WL 4271708 (S.D.N.Y. July 23, 2020) .....................................9

*Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*,
  763 F.2d 55 (2d Cir. 1985) ....................................................................................................6

*In re Kurtzman*,
  194 F.3d 54 (2d Cir. 1999) ......................................................................................14, 14–15

*JW Oilfield Equip., LLC v. Commerzbank, AG*,
  764 F. Supp. 2d 587 (S.D.N.Y. 2011)..................................................................................5–6

*Kahn Lucas Lancaster, Inc. v. Lark Int'l Ltd.*,
  956 F. Supp. 1131 (S.D.N.Y. 1997)....................................................................................7, 8

*Koschkee v. Taylor*,
  2019 WI 76, 387 Wis. 2d 552, 929 N.W.2d 600 ...................................................................2

iv

*Lab Verdict, Inc. v. Lab Equip Ltd.*,
   436 F. Supp. 3d 1181 (S.D. Ind. 2020) ...................................................................13

*Laird v. Tatum*,
   408 U.S. 1 (1972)....................................................................................................18

*Libertarian Party of Connecticut v. Lamont*,
   No. 20-2179, 2020 WL 5849341 (2d Cir. Oct. 2, 2020)..................................... 18, 19, 21, 23

*Libertarian Party of Illinois v. Cadigan*,
   No. 20-1961, 2020 WL 5104251 (7th Cir. Aug. 20, 2020)........................................31

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*,
   673 F.3d 50 (2d Cir. 2012) .......................................................................................7

*Luft v. Evers*,
   963 F.3d 665 (7th Cir. 2020) ..............................................................22, *passim*

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992)........................................................................................... 16, 17

*Mastrovincenzo v. City of New York*,
   435 F.3d 78 (2d Cir. 2006) ......................................................................................19

*Mays v. LaRose*,
   951 F.3d 775 (6th Cir. 2020) ...................................................................................25

*McDonald v. Bd. of Election Comm'rs*,
   394 U.S. 802 (1969)......................................................................................... 21, 25

*Nader v. Cronin*,
   620 F.3d 1214 (9th Cir. 2010) .................................................................................25

*New York v. Trump*,
   No. 20-CV-2340-EGS, 2020 WL 5763775 (D.D.C. Sept. 27, 2020) ................. 13, 14

*Nken v. Holder*,
   556 U.S. 418 (2009)......................................................................................... 29, 30

*Obama for Am. v. Husted*,
   697 F.3d 423 (6th Cir. 2012) ...................................................................................27

*Ohio Democratic Party v. Husted*,
   834 F.3d 620 (6th Cir. 2016) ...................................................................................22

*Pers. Adm'r of Massachusetts v. Feeney*,
   442 U.S. 256 (1979)................................................................................................33

v

*Price v. N.Y. State Bd. of Elections*,
 540 F.3d 101 (2d Cir. 2008) ...........................................................................................21

*Purcell v. Gonzalez*,
 549 U.S. 1 (2006) ...........................................................................................................31

*Republican Nat'l Comm. v. Democratic Nat'l Comm.*,
 140 S. Ct. 1205 (2020) ...................................................................................................31

*Rockefeller v. Powers*,
 74 F.3d 1367 (2d Cir. 1995) ...........................................................................................25

*Rodriguez v. DeBuono*,
 175 F.3d 227 (2d Cir. 1999) ...........................................................................................19

*Romeu v. Cohen*,
 265 F.3d 118 (2d Cir. 2001) ...........................................................................................24

*Salinger v. Colting*,
 607 F.3d 68 (2d Cir. 2010) ........................................................................................ 19, 20

*Schulz v. New York*,
 No. 1:07-CV-0943-LEK/DRH, 2008 WL 11504719 (N.D.N.Y. June 4, 2008) .......................9

*Segovia v. United States*,
 880 F.3d 384 (7th Cir.),
 *cert. denied*, 139 S. Ct. 320 (2018) ...............................................................................24

*Susan B. Anthony List v. Driehaus*,
 573 U.S. 149 (2014) .................................................................................................. 16, 17

*Telebyte, Inc. v. Kendaco, Inc.*,
 105 F. Supp. 2d 131 (E.D.N.Y. 2000) ...............................................................................11

*Texas Democratic Party v. Abbott*,
 961 F.3d 389 (5th Cir. 2020) ...........................................................................................25

*Timmons v. Twin Cities AreaNew Party*,
 520 U.S. 351 (1997) .................................................................................................. 21, 22

*U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*,
 916 F.3d 143 (2d Cir. 2019) .............................................................................................5

*United Computer Capital Corp. v. Secure Prod., L.P.*,
 218 F. Supp. 2d 273 (N.D.N.Y. 2002) ......................................................................... 7–8, 8

*United States v. Stamps*,
 No. 18-CV-1106-BMC, 2018 WL 6031155 (E.D.N.Y. Nov. 16, 2018) ..................... 10–11, 11

vi

*Van Wie v. Pataki*,
   267 F.3d 109 (2d Cir. 2001) ...................................................................15

*Veasey v. Perry*,
   769 F.3d 890 (5th Cir. 2014) .................................................................31

*Warth v. Seldin*,
   422 U.S. 490 (1975).............................................................................14

*Whitmore v. Ark.*,
   495 U.S. 149 (1990).............................................................................17

*Winter v. Nat. Res. Def. Council, Inc.*,
   555 U.S. 7 (2008).................................................................................29

*Yang v. Kosinski*,
   960 F.3d 119 (2d Cir. 2020) .................................................................19

*Ying Jing Gan v. City of New York*,
   996 F.2d 522 (2d Cir. 1993) .................................................................15

**Constitutional Provision**

U.S. Const. art. III, § 2 .......................................................................... 14, 16

**Statutes**

28 U.S.C. § 1391(b) ...................................................................................14

52 U.S.C. § 20302(a)...................................................................................24

N.Y. C.P.L.R. § 302 (McKinney 2020) ...........................................................6–7, 7

Wis. Stat. § 5.05(1) ......................................................................................2

Wis. Stat. § 5.05(1e).....................................................................................2

Wis. Stat. § 6.24(4)(c) ...............................................................................2, 8

Wis. Stat. § 6.24(4)(e) .................................................................................23

Wis. Stat. § 6.24(6) ...................................................................................2, 8

Wis. Stat. § 6.24(7) ............................................................................2, *passim*

Wis. Stat. § 6.87(4)(b)1...........................................................................2, *passim*

**Other Authority**

11A Charles Alan Wright & Arthur R. Miller,
Federal Practice & Procedure § 2949 (2020)..........................................................................18

**INTRODUCTION**

Plaintiffs assert that the United States Constitution requires Wisconsin officials to accept ballots from overseas voters by fax or email, and they ask this Court for an injunction against those Wisconsin officials. The claims against the Wisconsin defendants should be dismissed. Most fundamentally, this Court lacks personal jurisdiction over them. There is simply no indication that any of the Wisconsin officials have any connection to New York, so jurisdiction is lacking as a matter of New York's long-arm statute as well as due process. In addition, Plaintiffs' claims should be dismissed because of mootness, lack of standing, and failure to state a claim.

If the Court would even reach the preliminary-injunction standards as to the Wisconsin defendants, it should deny the injunction. The only Wisconsin plaintiff has already returned her ballot, which has been received by her local clerk in Wisconsin. Thus, there is no evidence that Wisconsin's law poses a threat of irreparable harm to any party here—the most important requirement for a preliminary injunction. Plaintiffs also have no likelihood of success on their constitutional claims: Wisconsin's law imposes *no* burden on overseas voters when it extends to them the privilege of casting an absentee ballot in Wisconsin when living abroad. And if there were any burden, it is easily outweighed by Wisconsin's interests in the administrability and integrity of elections. Indeed, the United States Court of Appeals for the Seventh Circuit recently recognized these very interests when upholding Wisconsin's absentee-voting laws against a similar challenge. These Plaintiffs have no better likelihood of success by asking this Court to revisit that analysis.

Last, the balance of equities and public interests also weigh decisively against changing Wisconsin election law this close to the election. Altering how some Wisconsin voters (but not others) can return their ballots, while absentee voting is already underway, poses grave risks of

mistakes, confusion, and potential disparate treatment of ballots. If any other reasons were needed, the Supreme Court's *Purcell* principle effectively forecloses entering injunctive relief weeks before Election Day with hundreds of thousands of ballots already returned and many more in transit.

With all of the deficiencies in Plaintiffs' claims against Wisconsin officials, those claims should be dismissed. At the very least, the preliminary injunction should be denied.

## BACKGROUND

Plaintiffs allege that Wisconsin's absentee voting laws are unconstitutional because, while those laws allow local election officials to send ballots to overseas voters by fax or email, the laws require voted ballots to be returned by traditional mail, not by fax or email. *See* Wis. Stat. §§ 6.24(7), 6.87(4)(b)1. Plaintiffs have sued the six Commissioners that make up Wisconsin's Elections Commission: Ann S. Jacobs, Mark L. Thomsen, Marge Bostelmann, Julie Glancey, Dean Knudson, and Robert Spindell, Jr., in their official capacities (collectively, "the Commissioners"). The Commissioners, when acting as a body, administer aspects of Wisconsin's elections laws and also are bound by those laws.[1] *See* Wis. Stat. § 5.05(1), (1e). Importantly, in Wisconsin, ballots are sent and received by municipalities (i.e., non-state actors) not the Elections Commission. *See* Wis. Stat. § 6.24(4)(c), (6) (absentee ballots sent by municipal clerks); Wis. Stat. § 6.87(4)(b)1. (overseas absentee ballots returned to municipal clerk by mail or in person). (*See also* Wolfe Decl. ¶¶ 6–10.)

---

[1] Plaintiffs assert that Defendants have failed to take "action completely within their control (Dkt. 1 ¶ 2), but do not explain what that means as applied to the Commissioners. Wisconsin law does not give the Commissioners discretion to disregard the statutory requirements governing overseas-absentee ballots—namely, that they "shall be marked and returned, deposited and recorded in the same manner as other absentee ballots": by mail or delivered in person, "to the municipal clerk issuing the ballot or ballots." Wis. Stat. §§ 6.24(7), 6.87(4)(b)1. *See Koschkee v. Taylor*, 2019 WI 76, ¶ 20, 387 Wis. 2d 552, 929 N.W.2d 600 (agency's "powers, duties and scope of authority are fixed and circumscribed by the legislature") (citation omitted).

The only factual allegations in the complaint directed at Wisconsin come from Plaintiff Katie Von Holzen, who alleges she resides in Germany. (Dkt. 1 ¶ 19.) She states that she has managed to vote by mail in Wisconsin from Germany in the past. (Dkt. 1 ¶ 19.) And for this election she already received her ballot, voted it, and successfully returned it to Wisconsin. (Dkt. 1 ¶ 19; *see also* Wolfe Decl. ¶ 21, Ex. A.)

Nonetheless, Von Holzen says she is worried about "slowdowns" in international mail and used a private courier to return her ballot, which she avers is "at a comparably higher financial burden." (Dkt. 1 ¶ 19; *see also* Dkt. 13-9 ¶ 7 (Von Holzen Aff.).) She does not explain this alleged "slowdown"—for example, whether there is some factual basis to believe that a ballot mailed weeks ahead of Election Day would not arrive on time through normal postal services. (*See* Dkt. 13-9.)

The only other relevant allegations relate to JFK airport, specifically that the postal service uses JFK as one of nine international mail facilities, which, according to the Plaintiffs, handles a disproportionate share of international mail. (Dkt. 1 ¶¶ 8–9 & n.2.) Plaintiffs also say that some mail going through JFK gets marked as undeliverable. (Dkt. 1 ¶ 10.)

But Plaintiffs do not allege that any of this applies to Plaintiff Von Holzen or the Commissioners. For example, they do not allege that her ballot came through JFK—in fact, her evidence suggests otherwise. She received her ballot electronically and returned it by "private courier," not USPS. (*See* Dkt. 13-9 ¶ 7.) And Von Holzen acknowledges that she voted by mail in the past and does not allege it was undeliverable. (Dkt. 1 ¶ 19.) It certainly was not undeliverable this time—Von Holzen's local clerk in Wisconsin already received her ballot. (Wolfe Decl. ¶ 21, Ex. A.) And Plaintiffs do not allege that the Commissioners have purposefully used JFK—mail

3

routing decisions are made by the postal service—let alone purposefully availed themselves of the benefit of New York laws.

## ARGUMENT

This Court lacks jurisdiction over Wisconsin's Elections Commissioners, who have taken *none* of the measures necessary to support jurisdiction under New York's long-arm statute or consistent with due process. This lack of jurisdiction mandates dismissal, and necessarily means that no injunction should issue as to the Wisconsin defendants.

Also supporting both dismissal and denial of the preliminary injunction are that Plaintiffs' claims against the Wisconsin defendants are nonjusticiable, since the only Wisconsin voter here has already voted—there is no injury and no live controversy.

If the Court were to move beyond these jurisdictional deficiencies, the preliminary injunction should be denied as to the Wisconsin defendants because none of the controlling factors support an injunction: The Wisconsin plaintiff has already voted, so there's no irreparable harm. There is no likelihood of success on the *Anderson/Burdick* claim, since Wisconsin's overseas-absentee voting law regime imposes *no* burden, and even if it did, any burden would be easily outweighed by Wisconsin's important interest in election integrity and administration. And the balance of equities and public interest weigh heavily against a drastic shift in absentee balloting procedures three weeks before the election.

Finally, Plaintiffs' equal-protection claim (forfeited in their preliminary-injunction filings) also fails to state a claim, since Wisconsin law mandates that overseas absentee voters are subject to the same ballot-delivery requirements as all other absentee voters.

### I. The claims against Wisconsin officials should be dismissed for lack of personal jurisdiction.

When personal jurisdiction is challenged, "the plaintiff bears the burden of establishing that the court has jurisdiction over the defendant." *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999). A plaintiff must make a sufficient "averment of facts that, if credited[,] would suffice to establish jurisdiction over the defendant." *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 81 (2d Cir. 2018) (alternation in original) (citation omitted). Plaintiffs here cannot meet that burden as to Wisconsin's Commissioners either as matter of long-arm jurisdiction or due process.

"To determine personal jurisdiction, a federal district court applies the long-arm statute of the state in which it sits." *U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*, 916 F.3d 143, 149 (2d Cir. 2019). Further, "[t]o comport with due process, a forum state may exercise jurisdiction over an out-of-state corporate defendant only if the defendant has 'certain minimum contacts with [the State] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Id.* (alteration in original) (citation omitted). Thus, personal jurisdiction may be lacking for either of two reasons: as a matter of New York's long-arm law or as a matter of due process. *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 164 (2d Cir. 2010). Here, Plaintiffs' claims against the Wisconsin Commissioners fail for both reasons.

### A. This Court lacks jurisdiction under New York's long-arm statute.

Under New York law, courts may exercise personal jurisdiction in two ways: based on general or specific jurisdiction. Neither is present here.

As for general jurisdiction, Plaintiffs do not meaningfully attempt to plead it, and for good reason. It is "predicated upon corporate presence," where an entity "is 'engaged in such a continuous and systematic course of doing business here [in NY] as to warrant a finding

5

of its presence in this jurisdiction.'" *JW Oilfield Equip., LLC v. Commerzbank, AG*, 764 F. Supp. 2d 587, 592 (S.D.N.Y. 2011) (alteration in original) (citation omitted). It means that the defendant "does business" in New York in the "traditional sense." *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 198 (2d Cir. 1990) (citation omitted). That test is not easily met. Factors include "the existence of an office in New York; the solicitation of business in the state; the presence of bank accounts and other property in the state; and the presence of employees of the foreign defendant in the state." *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 58 (2d Cir. 1985). General jurisdiction will only be found in the "exceptional case." *Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 135 (2d Cir. 2014) (citation omitted).

Here, Plaintiffs do not even attempt to allege that Wisconsin's Commissioners have a "presence" in New York as that term is used under general jurisdiction jurisprudence. The Commissioners are housed in Wisconsin and have no employees, bank accounts, property, or offices in New York, much less in a systematic and continuous sense so as to be "at home" in New York. There is no general jurisdiction.

Under a specific jurisdiction analysis, Plaintiffs fare no better. New York's long-arm statute provides for specific jurisdiction over a non-domiciliary who, for example, transacts business or commits a tort in New York. Specifically, the statute reaches anyone who:

1.   transacts any business within the state or contracts anywhere to supply goods or services in the state; or

2.   commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or

3.   commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he

(i)   regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or

(ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; or

4. owns, uses or possesses any real property situated within the state.

N.Y. C.P.L.R. § 302 (McKinney 2020). None of these apply here.

To "transact business" means the defendant "must purposefully avail itself of the privilege of conducting activities within New York, thus invoking the benefits and protection of its laws." *United Computer Capital Corp. v. Secure Prod., L.P.*, 218 F. Supp. 2d 273, 277 (N.D.N.Y. 2002) (citation omitted). Jurisdiction does not attach based on "random, fortuitous, or attenuated contacts." *Id.* (citation omitted). Further, this analysis should be viewed through the lens that defendants "should be subject to suit where they are normally found, that is, at their pre-eminent headquarters or where they conduct substantial general business activities." *Id*.

Only in "rare cases" should defendants be compelled to answer a suit in a jurisdiction where they have "the barest of contact." *Id.* at 278. For example, "the transitory presence of a corporate official" in New York has been found insufficient, as have "communications and shipments sent here by an out-of-state doctor serving as a 'consultant' to plaintiff's New York physician." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 62 (2d Cir. 2012). As a rule, contacts through phone calls, mail, and fax are "insufficient to confer personal jurisdiction." *Kahn Lucas Lancaster, Inc. v. Lark Int'l Ltd.*, 956 F. Supp. 1131, 1135 (S.D.N.Y. 1997) (collecting cases).

Plaintiffs do not allege that Wisconsin's Commissioners did anything remotely covered by N.Y. C.P.L.R. § 302. There is no allegation that the Commissioners committed torts, has property, derived revenue, solicited business, engaged in a business transaction, or supplied goods or services in New York. Put differently, the Commissioners did not "purposefully avail [themselves]

7

of the privilege of conducting activities within New York, thus invoking the benefits and protection of its laws." *United Computer Capital Corp.*, 218 F. Supp. 2d at 277.

Rather, at best, Plaintiffs point to "random, fortuitous, or attenuated contacts," *id.*, in that the postal service allegedly routes some Wisconsin-bound mail through JFK.[2] That is not nearly enough under the long arm statute—it contains no provision for mail-routing decisions made by a third party. In fact, there are many problems with this theory. The attenuated act that is tied to JFK and New York—the mail routing—would not be the Commissioners' act in the first place. It is an act by the postal service to route mail through JFK, as opposed to some other hub. Likewise, if the postal service sometimes marks mail as "undeliverable" in New York, that is an action by the postal service, not the Commissioners. (*See* Dkt. 1 ¶ 10.)

Moreover, Wisconsin's Commissioners do not even handle sending or receiving ballots, both of which are done at the municipal level. *See* Wis. Stat. §§ 6.24(4)(c), (6), 6.87(4)(b)1. (*See also* Wolfe Decl. ¶¶ 6–10.) In turn, the voter mails the ballot back to the local clerks. Thus, in terms of the long-arm statute, non-defendants send or receive mail intended for somewhere other than New York: in this case, Germany or Wisconsin.

None of this remotely resembles transacting business in New York. Even if someone in Wisconsin were mailing something relevant to someone in New York (which, again, isn't happening) that alone would not be enough to confer jurisdiction. *See Kahn Lucas Lancaster, Inc.*, 956 F. Supp. at 1135.

The claims should be dismissed for lack of personal jurisdiction under New York law. That result would be consistent with other attempted actions naming out-of-state election

---

[2] However, Plaintiffs' evidence suggests that Von Holzen's most recent Wisconsin ballot was not routed through JFK. (*See* Dkt. 13-9 ¶ 7.)

officials. *E.g.*, *Schulz v. New York*, No. 1:07-CV-0943-LEK/DRH, 2008 WL 11504719, at *4–5 (N.D.N.Y. June 4, 2008) (no personal jurisdiction over out-of-state election officials); *Hewes v. Alabama Sec'y of State*, No. 19-CV-9158-LJL, 2020 WL 4271708, at *3 (S.D.N.Y. July 23, 2020) (same).

### B.    In addition, jurisdiction would be improper as a matter of due process.

The analysis above is dispositive. However, due process poses an additional bar for essentially the same reasons. It prevents the exercise of jurisdiction where, as here, contacts are minimal or nonexistent.

"This analysis has two related components: the 'minimum contacts' inquiry and the 'reasonableness' inquiry." *Chloe*, 616 F.3d at 164. The contacts inquiry looks to "the totality of Defendants' contacts with the forum state." *Id.* Even where there are sufficient contacts, jurisdiction still may be improper if exercising it is unreasonable. *Id.* at 165. That inquiry asks "whether the assertion of personal jurisdiction comports with 'traditional notions of fair play and substantial justice'—that is, whether it is reasonable to exercise personal jurisdiction under the circumstances of the particular case." *Id.* (citation omitted). Put differently, "[a] court may exercise personal jurisdiction only over a defendant whose 'conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there'"—meaning a defendant has "purposefully avail[ed] itself of the privilege of conducting activities within the forum State." *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 126 F.3d 365, 370 (2d Cir. 1997) (citation omitted).

It would violate these due process principles for Wisconsin's Commissioners to be haled into court in New York. Again, the pleadings point to no relevant contacts with New York by the Commissioners (or by any other Wisconsin actor). Rather, they point to the fact that, under Wisconsin law, municipalities may send overseas ballots by mail or email and overseas electors

9

may return ballots by mail. In turn, the postal service sometimes routes some of those mailings through New York on their way to somewhere else—although apparently not as to Plaintiff Von Holzen. (Dkt. 13-9 ¶ 7.) Examining the "totality" of contacts by Wisconsin's Commissioners results in nothing to measure. *See Chloe*, 616 F.3d at 164.

Likewise, it would be unreasonable to allow this suit to proceed in New York. The claim against Wisconsin's Commissioners concerns a Wisconsin statute passed by the Wisconsin Legislature that governs Wisconsin voters. It has nothing whatsoever to do with New York. Wisconsin has not "purposefully avail[ed]" itself of New York's laws and privileges, and it would have no reason to think it could be haled into court in New York in a challenge to its election laws. *See Computer Assocs. Int'l, Inc.*, 126 F.3d at 370. Rather, Wisconsin laws are challenged with some frequency, and those challenges are filed in Wisconsin. This case presents nothing different. Due process would prevent the Court's exercise of jurisdiction here.

### C. Plaintiffs' jurisdictional argument does not come to terms with the applicable statutory and due process standards.

Plaintiffs include a jurisdictional argument in their preliminary injunction brief but fail to come to terms with the fundamental requirements that Wisconsin defendants needed to have been conducting business in New York and to have purposefully done so to a significant degree.

Plaintiffs' citations to cases involving the mail—the only hook they propose here—nicely illustrate what's lacking here. They cite *United States v. Stamps*, No. 18-CV-1106-BMC, 2018 WL 6031155 (E.D.N.Y. Nov. 16, 2018), which involved a challenge to venue in a mail-fraud case filed by the United States against defendant Stamps. *Stamps* was not about personal jurisdiction; it was about venue, which comes with different standards (the interests of justice and convenience), and presumptions more favorable to a plaintiff (the chosen venue is given

weight and the challenger bears the burden). *Id.* at \*2. And even if *Stamps* had been about personal jurisdiction, it demonstrates what is missing here:

> [T]he allegedly fraudulent mail solicitations not only traveled out of and into the United States through the United States Postal Service International Service Center at JFK airport, but were delivered to thousands of alleged victims in the Eastern District of New York. *More importantly*, the Government alleges that defendants received responses and payments from hundreds of victims in this district and cashed checks processed against bank accounts in this district.

*Id.* at \*2 (emphasis added). Thus, in *Stamps*, unlike here, the defendant directly and purposefully sent allegedly fraudulent materials to people in New York and, in turn, received payments from them. Here, Plaintiffs offer nothing to show that Wisconsin's Commissioners (or any other Wisconsin official) directed anything to New York residents, much less complete a transaction.

Oddly, Plaintiffs also cite *Telebyte, Inc. v. Kendaco, Inc.*, 105 F. Supp. 2d 131 (E.D.N.Y. 2000), a trademark case where personal jurisdiction was lacking. That case addressed jurisdiction over an internet service provider with its principal place of business in the Washington State; the plaintiff's principal place of business was in New York. *Id.* at 133. The alleged long-arm basis for jurisdiction was a tort: offering an infringing product for sale in New York through a generally-accessible internet site; mailing a sales brochure and order sheet to a New York entity; and conducting internet business in a way that resulted in a tort in New York via confusion over the trademark. *Id.* at 135–36. But even all of that was not enough when the plaintiff did not show the defendant "consistently does business within the state of New York" or that the Washington company could have anticipated its actions were subject to suit in New York. *Id.* at 136. *Telebyte* only reinforces why there is no jurisdiction over Wisconsin's Commissioners.

Plaintiffs' remaining discussion skips over the long-arm statute's requirements and the minimum contacts required by due process. They instead cite reasonableness "factors," as if those factors could substitute for actually and purposefully transacting business in New York or

11

committing a tort. They can't, as already discussed above—one must first have the requisite contacts; only then does reasonableness come into play as an additional analytical step.

For example, they cite *Asahi Metal Industry Co. v. Superior Court of California*, 480 U.S. 102 (1987), which held jurisdiction was lacking as a matter of due process. The plaintiff alleged that jurisdiction could attach based on the defendant's "mere awareness" that components it manufactured and sold outside the United States would reach a forum state. *Id.* at 105. The Supreme Court disagreed. The key holding in *Asahi* was that the "'substantial connection' between the defendant and the forum State necessary for a finding of minimum contacts must come about by *an action of the defendant purposefully directed toward the forum State*." *Id.* at 112 (citation omitted). And perhaps more to the point here: "a defendant's awareness that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State." *Id.*

That proposition alone defeats jurisdiction here: Plaintiffs merely allege that Wisconsin knows that some mail will flow through JFK on its way to somewhere else. But putting something in the stream of mail is not a purposeful act directed at New York citizens or entities. That is dispositive: lacking minimum contacts means due process (and also New York law) prevents jurisdiction. *See id.* at 113 (holding that lack of minimal contacts means due process prevents jurisdiction).

Similarly unhelpful to Plaintiffs is their citation to *Elsevier, Inc. v. Grossman*, 77 F. Supp. 3d 331 (S.D.N.Y. 2015), a RICO action where the defendants allegedly committed fraud by conspiring to purchase plaintiffs' low-priced subscriptions to resell them at inflated prices. Plaintiff had its principal place of business in New York. The court found there was

12

jurisdiction because the defendants indeed transacted business in New York by ordering hundreds of subscriptions from the plaintiff, some of which were also delivered to a defendant's New York address—those business transactions in New York were "purposeful" and substantially related to the claim asserted, and so would support jurisdiction. *Id.* at 344. And defendants also committed alleged torts in New York, a defendant had an apartment in New York, and the harms were suffered by a New York entity. *Id.* at 345–47. Again, there is nothing remotely like this here. The same is true of *Lab Verdict, Inc. v. Lab Equip Ltd.*, 436 F. Supp. 3d 1181 (S.D. Ind. 2020), which concerned an intentional tort directed at an Indiana company

Plaintiffs' next case, *Exxon Mobil Corp. v. Schneiderman*, 316 F. Supp. 3d 679 (S.D.N.Y. 2018), involved a lawsuit brought by Exxon against the New York and Massachusetts attorneys general, challenging those offices' investigations of it. Personal jurisdiction over the Massachusetts AG was based on an allegation that the AGs "formalized their conspiracy against Exxon" at a New York conference. *Id.* at 697. If true, that was enough for jurisdiction because of the alleged significance of the meeting and its connection to the claim. *Id.* Again, there is nothing like this here.

And, puzzlingly, Plaintiffs also cite a multistate lawsuit against USPS, where multiple states joined a single suit about USPS's nationwide practices. *New York v. Trump*, No. 20-CV-2340-EGS, 2020 WL 5763775, at *4 (D.D.C. Sept. 27, 2020). Nothing about that case suggests that Wisconsin's Commissioners, who have no nationwide presence or activity, would properly be subject to suit in New York.

13

In sum, Plaintiffs do not come close to supporting personal jurisdiction over Wisconsin's Commissioners, either as a matter of statutory law or due process. As a result, the claims must be dismissed.[3]

**II.     Plaintiffs' claims about Wisconsin law are nonjusticiable: Von Holzen's ballot has been received in Wisconsin, so any claim is moot, and she lacks standing to sue the Wisconsin Commissioners.**

A justiciable case or controversy is a fundamental requirement for federal court jurisdiction. *Warth v. Seldin*, 422 U.S. 490, 499 & n.10 (1975); U.S. Const. art. III, § 2. Here, even if this Court had personal jurisdiction over Wisconsin's Commissioners, the Wisconsin plaintiff's claim is moot and she lacks standing.

**A.     Plaintiff Von Holzen's claim is moot because her ballot for the upcoming election has been received in Wisconsin.**

Plaintiff Von Holzen, the only plaintiff implicating Wisconsin, has already voted in the upcoming election, meaning her claim—the only claim against Wisconsin's Commissioners—is moot. A case is moot when it is "impossible for the court to grant *any* effectual relief whatever to a prevailing party." *In re Kurtzman*, 194 F.3d 54, 58 (2d Cir. 1999) (citation omitted). Restated, "[a] claim is moot when the issue presented is no longer live or when the plaintiff no longer has a stake in its outcome." *Cheung v. Youth Orchestra Found. of Buffalo, Inc.*, No. CIV-88-984E, 1988 WL 125193, at *2 (W.D.N.Y. Nov. 18, 1988). "When a case becomes moot, the federal

---

[3] For similar reasons, venue is improper in this Court. *See* 28 U.S.C. § 1391(b). No Wisconsin defendant lives in this district; Wisconsin's Commissioners performed no acts or omissions here; and there are other districts available—in Wisconsin. *See id.* Also of note, in their October 2 response to the show-cause order on joinder, Plaintiffs argue that these cases are properly joined in one action under the joinder rules or may be proper for consideration by the Judicial Panel on Multidistrict Litigation, but they point to no example of such an action challenging various state laws and their various effects—for example, the Wisconsin plaintiff here admits she has her ballot, has had it for some time, and has voted overseas in the past under the particular processes provided by the Wisconsin statutes. That is nothing like multiple states suing a particular corporation or divvying up rights to a particular waterway. Thus, there are venue and joinder problems, but the more fundamental problem remains jurisdictional.

14

courts 'lack[ ] subject matter jurisdiction over the action.'" *In re Kurtzman*, 194 F.3d at 58 (citation omitted) (alternation in original).

Plaintiff Von Holzen's ballot was received by her Wisconsin municipal clerk on October 5, nearly a month ahead of the deadline of November 3. (Wolfe Decl. ¶ 21, Ex. A.) To accomplish this, she avers that, instead of relying on the postal service, she used a "private courier, at a comparably higher financial burden." (Dkt. 13-9 ¶ 7.)

However her ballot got there, her claims against Wisconsin's Commissioners are moot. Von Holzen no longer has a stake in the outcome of this case, and no prospective relief involving Wisconsin's voting laws would make a difference for her ability to vote in the November election. *See In re Kurtzman*, 194 F.3d at 58; *Cheung*, 1988 WL 125193, at *2. She also does not seek recoupment of what she spent on the private courier, but nor could she, as such a claim would be barred by the Eleventh Amendment's immunity. *See Ying Jing Gan v. City of New York*, 996 F.2d 522, 529 (2d Cir. 1993).

Thus, there is no plaintiff with a stake in Wisconsin's laws, and no evidence those laws threaten *anyone's* right to vote.

If Plaintiffs were to argue the mootness exception for claims capable of repetition but evading review, they have pleaded themselves into a corner. That exemption applies "only in exceptional situations." *Van Wie v. Pataki*, 267 F.3d 109, 113 (2d Cir. 2001) (citation omitted). Two things must be true: "(1) the challenged action [is] in its duration too short to be fully litigated prior to its cessation or expiration, *and* (2) there [is] a reasonable expectation that the same complaining party [will] be subjected to the same action again." *Id.* at 114 (alteration in original) (emphasis added) (citation omitted). Here, the pleadings are about a "confluence" of a pandemic with an overseas voting law, which allegedly constitutes an "emergency" for purposes of the

15

upcoming November election. (Dkt. 1 ¶¶ 2, 81, 101.) There is no reasonable likelihood that this confluence will recur for the same complaining party, Von Holzen. The last pandemic of this magnitude was in 1918.[4]

Von Holzen cannot show that there is a reasonable expectation that she will face the same confluence of a pandemic allegedly affecting her international mail and her desire to vote in an election. Her claim is moot, and no exception applies.

### B.    Plaintiff Von Holzen has failed to show injury-in-fact to support standing.

For similar reasons that her claim is moot, Plaintiff Von Holzen also lacks standing. To establish Article III standing, a plaintiff must show (1) an "injury in fact," (2) a sufficient "causal connection between the injury and the conduct complained of," and (3) a "likel[ihood]" that the injury "will be 'redressed by a favorable decision.'" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (citation omitted).

This case concerns the injury-in-fact requirement, which helps to ensure that the plaintiff has a "personal stake" in the outcome of the controversy, as well as redressability. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014). An injury sufficient to satisfy Article III must be "concrete and particularized" and "actual or imminent, not 'conjectural' or 'hypothetical.'" *Lujan*, 504 U.S. at 560 (citation omitted). An allegation of future injury may suffice if the threatened injury is "certainly impending," or there is a "substantial risk" that the harm will occur. *Susan B. Anthony*, 573 U.S. at 158 (citations omitted).

---

[4] *See*, *e.g.*, Lenny Burnsten, *Covid-19 death toll rivals fatality rate during 1918 flu epidemic, researchers say*, Washington Post (Aug. 13, 2020), https://www.washingtonpost.com/health/covid-19-death-toll-rivals-fatality-rate-during-1918-flu-epidemic-researchers-say/2020/08/13/48e1dbf2-dd01-11ea-b205-ff838e15a9a6_story.html (last visited Oct. 9, 2020).

The party invoking federal jurisdiction bears the burden of establishing standing. *Id.* "[E]ach element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561.

Here, again, the only plaintiff asserting claims against the Wisconsin Commissioners is Von Holzen. (*See* Dkt. 1 ¶ 19.) According to Von Holzen, she sent in a Federal Write-In Ballot (FWAB) by post, but its "delivery . . . was significantly delayed." (Dkt. 13-9 ¶ 7.) Von Holzen does not explain how long a delay she experienced by mailing her FWAB. As such, describing the delay as "significant[ ]" is conclusory and unsupported, as is her allegation about the cost of a private courier. Regardless, Von Holzen's FWAB ballot appears to have been delivered. (*See* Dkt. 13-9 ¶ 7.) More importantly, her separate, state absentee ballot was, in fact, delivered on October 5 to the local Wisconsin clerk. (Wolfe Decl. ¶ 21, Ex. A.) Von Holzen has thus suffered no injury; certainly none that would be redressed by the injunction sought here.

To the extent her pleadings attempt to invoke a future injury, they are too speculative to support standing. "Allegations of possible future injury do not satisfy the requirements of Art. III. A threatened injury must be 'certainly impending' to constitute injury in fact." *Whitmore v. Ark.*, 495 U.S. 149, 158 (1990) (citation omitted). Where a plaintiff's claim relies "on a highly attenuated chain of possibilities," it does not "satisfy the requirement that threatened injury must be certainly impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013).

Von Holzen has not alleged or shown a "certainly impending future injury." Her subjective, hypothetical fears that her absentee ballot *might have been* delivered late does not support standing. *See id.* at 417–18 ("Allegations of a subjective 'chill' are not an adequate substitute for a claim of

17

specific present objective harm or a threat of specific future harm." (quoting *Laird v. Tatum*, 408 U.S. 1, 13 (1972))); *see also* 11A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 2949 (2020) (motions for preliminary injunctions "frequently are denied if the affidavits [in support of the motion] are too vague or conclusory to demonstrate a clear right to relief under Rule 65"). Notably, Plaintiffs' own evidence about a voter from another state indicates that mail from Germany to the United States *is not* significantly delayed, if at all. (Dkt. 13-4 ¶ 8 (ballot mailed September 16 in Germany arrived in United States September 18).)

Because Von Holzen has suffered no injury and instead relies on speculative fears of mail delays, she lacks standing and her claims against the Wisconsin officials could be dismissed for this additional reason.

**III.    Plaintiffs fail to satisfy any of the elements to support a preliminary injunction as to Wisconsin's overseas-voting law.**

This Court should not reach the merits for the various reasons discussed above. However, for the sake of completeness, the following explains why Plaintiffs' injunction request should be rejected. The most important element for a preliminary injunction—irreparable harm—is lacking, since the only Wisconsin plaintiff already voted. Further, Plaintiffs' claims are unlikely to succeed, and the balance of equities weighs heavily in favor of preserving the status quo of Wisconsin's current absentee-balloting regime.

**A.    Legal standards governing mandatory preliminary injunctive relief.**

Ordinarily, to obtain a preliminary injunction against governmental officials who are implementing state law, the movant must demonstrate (1) irreparable harm absent injunctive relief; (2) a likelihood of success on the merits; (2) public interest weighing in favor of granting the injunction, and that the balance of equities tips in the movant's favor. *Libertarian Party of Connecticut v. Lamont*, No. 20-2179, 2020 WL 5849341, at *2 (2d Cir. Oct. 2, 2020).

18

However, these requirements are heightened when, as here, the movant seeks "to modify the status quo by virtue of a 'mandatory preliminary injunction' (as opposed to seeking a 'prohibitory preliminary injunction' to maintain the status quo)." *Yang v. Kosinski*, 960 F.3d 119, 127 (2d Cir. 2020) (quoting *Mastrovincenzo v. City of New York*, 435 F.3d 78, 89 (2d Cir. 2006)). In these instances, the movant must make a "strong showing" of irreparable harm and demonstrate a "clear or substantial likelihood of success on the merits." *Id.* at 128; *see also Libertarian Party of Connecticut*, 2020 WL 5849341, at *2 (noting "particularly exacting" standard when challengers seek mandatory preliminary injunction).

> **B.    Wisconsin's overseas voting law imposes no threat of irreparable harm since the only Wisconsin voter has already voted and there is no evidence that Wisconsin's law threatens any other voter.**

The irreparable harm requirement is "the single most important prerequisite for the issuance of a preliminary injunction." *Faiveley Transport Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009) (quoting *Rodriguez v. DeBuono*, 175 F.3d 227, 234 (2d Cir. 1999). To satisfy this requirement, plaintiffs "must demonstrate that absent a preliminary injunction they will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm." *Id.* (quoting *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007)). Courts should not presume irreparable harm; instead, "plaintiffs must show that, on the facts of their case, the failure to issue an injunction would actually cause irreparable harm." *Salinger v. Colting*, 607 F.3d 68, 82 (2d Cir. 2010).

This inquiry implicates the same facts relevant to mootness and the lack of injury, discussed above and not repeated at length here. The bottom line is that the only Wisconsin plaintiff's ballot has already been received by the local election clerk in Wisconsin. (Wolfe Decl. ¶ 21, Ex. A.)

19

Plaintiffs may try to rescue their claim by pointing to the likelihood that other Wisconsin overseas voters exist. But courts consistently reject such speculation about possible harms. *See, e.g.*, *Faively Transport Malmo AB*, 559 F.3d at 120 (vacating injunction where district court relied on "speculation" about risk of harm and where there was an "absence of *evidentiary support* of irreparable harm"); *Dexter 345 Inc. v. Cuomo*, 663 F.3d 59, 64 (2d Cir. 2011) (affirming denial of preliminary injunction where alleged irreparable harm involved nothing more than "conclusory assertions"); *see also Salinger*, 607 F.3d at 82, 84 (vacating and remanding preliminary injunction where district court failed to apply controlling standard, namely, that plaintiffs provide case-specific evidence of imminent and irreparable harm). With only speculation about how Wisconsin's law *might* impact other unidentified voters, the preliminary injunction should be denied for lack of irreparable harm. *See Faively Transport Malmo AB*, 559 F.3d at 118 (irreparable harm is "single most important" element for preliminary injunction (citation omitted)).

## C.    Plaintiffs are not likely to succeed on their *Anderson/Burdick* claim against the Wisconsin defendants.

Plaintiffs' *Anderson/Burdick* claim against Wisconsin elections officials is unlikely to succeed, much less "clear[ly]" or "substantial[ly]" likely, as is necessary to support the injunction requested here. Wisconsin law imposes *no* burden on overseas absentee voters, and instead extends privileges not available to other absentee voters. And even if Wisconsin's law were viewed as a "burden," that burden is easily outweighed by Wisconsin's strong interests in election administration and reliability. Without a "clear or substantial likelihood of success on the merits" of this claim, Plaintiffs' request to enjoin Wisconsin's election laws must be denied.[5]

---

[5] As described below, Plaintiffs abandon their equal-protection claim as a basis for a preliminary injunction.

20

**1.     Legal principles governing First Amendment claims under *Anderson/Burdick* balancing.**

States possess broad authority to regulate elections. *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 357 (1997) ("States may, and inevitably must, enact reasonable [election-related] regulations . . . to reduce election- and campaign-related disorder."). Because every election regulation will exclude some people from voting, the relevant constitutional question is whether the law and any resulting exclusion are reasonable given the interest the restriction serves. *See id*. at 358–59. This balancing analysis is referred to as the *Anderson/Burdick* test and involves two steps.

*First*, courts assess any alleged burden on the right to vote, weighing its character and magnitude. *Timmons*, 520 U.S. at 358. Where there is no evidence that a law imposes *any* burden on voting, the law will be sustained unless the challengers show that the law serves no conceivable rational basis. *See, e.g.*, *McDonald v. Bd. of Election Comm'rs*, 394 U.S. 802, 807–10 (1969) (applying rational-basis review to reject pre-sentence detainees' challenge to Illinois's absentee ballot laws because "the absentee statutes, which are designed to make voting more available to some groups . . . do not themselves deny [detainees] the exercise of the franchise"). Similarly, reasonable, nondiscriminatory laws that impose only slight burdens are generally justified simply by the State's strong regulatory interests in orderly elections. *See Burdick v. Takushi*, 504 U.S. 428, 434 (1992). "Review in such circumstances will be quite deferential . . . ." *Libertarian Party of Connecticut*, 2020 WL 5849341, at \*2 (quoting *Price v. N.Y. State Bd. of Elections*, 540 F.3d 101, 109 (2d Cir. 2008).) Only when a state's election regulations *as a whole* impose "severe restrictions" on First and Fourteenth Amendment rights will courts require a showing that the regulation is "narrowly drawn to advance a state interest of compelling importance." *Burdick*, 504 U.S. at 434 (citation omitted).

Several principles guide the burden inquiry. Importantly, as the United States Court of Appeals for the Seventh Circuit recently reiterated when assessing multiple Wisconsin laws, courts must evaluate an election law's impact not in isolation but as a part of "the state's election code *as a whole*." *Luft v. Evers*, 963 F.3d 665, 671 (7th Cir. 2020); *see also Burdick*, 504 U.S. at 441. For example, in *Burdick* the Court recognized that while a Hawaii law that prohibited write-in votes arguably had "severe" impacts when considered alone, the law imposed only a "limited burden" given the state's overall generous election system. *Burdick*, 504 U.S. at 436–39. Likewise, the court in *Luft* recognized that "Wisconsin has lots of rules that make voting easier" and on that basis rejected a raft of challenges to Wisconsin's election laws, reasoning that none of these "less-convenient feature[s]" rendered any of the challenged procedures unconstitutional. *Luft*, 963 F.3d at 672, 675. Any alleged burden must therefore be evaluated against the baseline of "the usual burdens of voting." *Crawford v. Marion Cty. Election Bd.*, 553 U.S. 181, 198 (2008) (opinion of Stevens, J.). So while a challenged law might pose significant burdens for some individuals, federal courts will not enjoin a State's law based on these particularized "hardship[s]" of certain voters. *Griffin v. Roupas*, 385 F.3d 1128, 1129–30 (7th Cir. 2004).

*Second*, after assessing the burden, courts turn to the state's interests in election administration. "Lesser burdens . . . trigger less exacting review," *Timmons*, 520 U.S. at 358, and "minimally burdensome and nondiscriminatory regulations" in particular "are subject to a 'less-searching examination closer to rational basis.'" *Ohio Democratic Party v. Husted*, 834 F.3d 620, 627 (6th Cir. 2016) (citation omitted). When the burdens imposed are reasonable and nondiscriminatory, the state's asserted regulatory interests will be enough to defeat the

22

challenge without any evidentiary showing of how the law serves those interests. *See Libertarian Party of Connecticut*, 2020 WL 5849341, at *2; *see also Frank v. Walker*, 768 F.3d 744, 750 (7th Cir. 2014) (recognizing that courts accept state's justifications for challenged election law as "legislative fact"). Only when the challenged law imposes severe burdens—in the context of the state's entire voting scheme—will the state be required to prove its law's narrow tailoring to the state interests at issue. *See Burdick*, 504 U.S. at 433–34.

### 2. Wisconsin's absentee-voting procedures were recently approved by the Seventh Circuit, and otherwise easily pass constitutional muster.

Just this summer, the Seventh Circuit upheld multiple Wisconsin election laws challenged under *Anderson/Burdick*, including Wisconsin's law "prohibit[ing] election officials from sending absentee ballots via email or fax to all but a few categories of voters."[6] *See Luft*, 963 F.3d at 672, 676–77. In rejecting the challenge, the court emphasized that *Anderson/Burdick* claims must assess "all parts of the electoral code," noting that travelling Wisconsin voters "have many ways to vote" under Wisconsin's generous system of election laws. *Id.* at 676–77. "Some travelers' potential inconvenience does not permit a court to override the state's judgment that other interests predominate." *Id.* at 677. As the court acknowledged, the state's interests in its absentee voting regime include administrability for local election officials, electoral integrity, and voter confidence in the security and secrecy of elections. *See id.*

Of particular note, the Seventh Circuit explicitly approved Wisconsin's difference in treatment between allowing military voters to return their voted ballots by fax or email and prohibiting fax or email transmission for all other voters. *See id.* at 677. The court held that

---

[6] As an overseas voter, Plaintiff Von Holzen is one of those "few" voters to whom clerks may *transmit* ballots electronically. *See* Wis. Stat. § 6.24(4)(e). Those ballots must be returned "in the same manner as other absentee ballots": either by mail or in person to the municipal clerk. *See* Wis. Stat. §§ 6.24(7), 6.87(4)(b)1.

Wisconsin's lawmakers "could reasonably conclude that members of the military face special problems . . . which justify willingness on the state's part to accept the burdens that fax or email cause for the vote-counting process." *Id.*

The Seventh Circuit's reasoning in *Luft* forecloses Plaintiffs challenge to Wisconsin's absentee voting laws here.

This is confirmed by applying the particulars of the *Anderson/Burdick* analysis. The first step—analyzing the burdens—shows that Plaintiff Von Holzen's claim is exceedingly weak. As an initial matter, Wisconsin's absentee voting procedure for overseas voters does not impose *any* burden on voters; instead, it provides an extra benefit by making voting accessible to overseas voters who have no ability or right to vote in Wisconsin other than what is provided in the Uniformed Overseas Citizens Absentee Voting Act (UOCAVA), which itself does not require that ballots be returnable by fax or email.[7] *See Romeu v. Cohen*, 265 F.3d 118, 120–21 (2d Cir. 2001) (recognizing that absent UOCAVA, nothing requires that overseas voters be allowed to vote *at all* unless former state of residence extends them the privilege); *see also Segovia v. United States*, 880 F.3d 384, 389 (7th Cir.) (same), *cert. denied*, 139 S. Ct. 320 (2018). Without any "burden" to speak of, Wisconsin's overseas-absentee-voting regime is subject to mere rational-basis review,

---

[7] UOCAVA does not require states to allow overseas voters to return voted ballots by email or fax. *See* 52 U.S.C. § 20302(a). Thus, Plaintiffs effectively argue that the Constitution mandates something that federal law expressly declined to require.

24

and must be sustained since it serves multiple, conceivable rational bases, discussed below. *See, e.g.*, *McDonald*, 394 U.S. at 807–10.[8]

But even accepting, for argument's sake, that Von Holzen's fears about the mail process amount to *some* burden, that burden is minimal, at most. This likely explains Plaintiffs' urging this Court to "skip th[is] first stage of the analysis" (Dkt. 13-1:23), since that analysis would be fatal to their claim.

For one thing, since Von Holzen's ballot has already arrived in Wisconsin, any conceivable burden from Wisconsin's laws is negated as to her—Wisconsin's overseas voting procedures worked exactly as intended. Because there are no other allegations about Wisconsin, there is no other burden to speak of.

Any other burden is completely hypothetical. Von Holzen discusses being "concerned" with the timeliness of the mail and suggests that her FWAB was "significantly delayed," but provides no specifics, such as why she was "concerned" about timeliness, or just how "delayed" the FWAB was. (Dkt. 13-9 ¶¶ 5–9.)

Most important, even accepting that Von Holzen's vague "concerns" about the mail constitute "burdens" under *Anderson/Burdick*, they are not burdens that Wisconsin's law imposes.

---

[8] Many circuit court decisions hold the same. *See, e.g.*, *Texas Democratic Party v. Abbott*, 961 F.3d 389, 403–04 (5th Cir. 2020) (applying rational-basis review in a challenge to vote-by-mail laws "designed to make voting more available to some" but which did not impose relative burden on challengers' ability to vote (quoting *McDonald*, 394 U.S. at 807–08)); *Mays v. LaRose*, 951 F.3d 775, 783 n.4 (6th Cir. 2020) (noting apparent inapplicability of *Anderson-Burdick* inquiry where challenged law does not in fact impose burden on voting and instead affords some voters additional procedure not available to others); *Frank v. Forest Cty.*, 336 F.3d 570, 574 (7th Cir. 2003) (applying rational-basis standard in challenge to redistricting laws where alleged malapportionment was perceived as "trivial"); *see also Rockefeller v. Powers*, 74 F.3d 1367, 1382 (2d Cir. 1995) (citing *McDonald* and applying rational-basis review in sustaining state-law signature requirement for ballot eligibility); *Arizona Libertarian Party v. Reagan*, 798 F.3d 723, 732 (9th Cir. 2015) (recognizing that where state election law imposes only de minimis burden on right to vote, state "need demonstrate only that [the challenged law] is rationally related to a legitimate state interest" (quoting *Nader v. Cronin*, 620 F.3d 1214, 1218 (9th Cir. 2010))).

Plaintiffs point to no precedent—because there is none—that requires state election officials to disregard state law to counteract alleged real-world difficulties beyond the officials' control.

Wisconsin's electoral laws "make voting easier than do the rules of many other states." *Luft*, 963 F.3d at 672; *see also Frank*, 768 F.3d at 748–49. "These facts matter"—indeed, are dispositive—when assessing a challenge to laws that allegedly burden voting. *See Luft*, 963 F.3d at 672, 675–77. The lack of any burden from Wisconsin's overseas-absentee-voting law dooms Plaintiffs' *Anderson/Burdick* claim.

The second part of the analysis—Wisconsin's interests—only confirms the weakness of Plaintiffs' claims. These interests include election-integrity considerations, like limiting the number of completed absentee ballots that are transmitted electronically; as well as practical considerations, such as the fact that electronic ballots cannot be run through vote-tabulating machines. Instead, local election officials must transfer any ballot received electronically onto an official paper ballot at the polling place. This leaves room for human error in the process of recreating the ballot, and it can compromise the secrecy of the ballot. It also creates extra work for municipal clerks and their staff.

The Seventh Circuit credited these very interests in rejecting the *Anderson/Burdick* challenge to Wisconsin's absentee-voting procedures. *See Luft*, 963 F.3d at 676–77. "Wisconsin wants to control errors arising from the fact that faxed or emailed ballots cannot be counted by machine and to protect the secrecy of the ballot." *Id.* at 677. These justifications are equally

26

applicable here, and easily defeat Plaintiffs' challenge, just like the Seventh Circuit reasoned three months ago.[9] *See id.*

Moreover, while there is no basis to apply a heightened standard, even that standard would be met, since the evidence of Wisconsin's tailoring already exists and shows the laws are properly tailored to the state's legitimate interests.[10] *See One Wisconsin Inst. v. Thomsen*, Case No. 15-CV-0324 (W.D. Wis.) (Dkt. 206:97–102 (defendants' post-trial brief, summarizing evidence in opposition to *Anderson/Burdick* challenge to Wisconsin law governing faxing and emailing of ballots)).

In light of the nonexistent burdens that Wisconsin's law imposes on overseas voting, contrasted with Wisconsin's established interests in election integrity and administrability of absentee voting, Plaintiffs are exceedingly unlikely to succeed on their challenge to Wisconsin's procedures under *Anderson/Burdick*.

> **3.    Plaintiffs offer nothing that establishes any burden from Wisconsin's law, and do not address the important interests served by Wisconsin's overseas-absentee voting laws.**

Plaintiffs begin their *Anderson/Burdick* argument with a doubly mistaken premise: that the burden of Wisconsin's law is "severe, standing alone." (Dkt. 13-1:24.) For one thing, courts

---

[9] Equally instructive is this Court's decision in *Dekom v. New York*, No. 12-CV-1318-JS/ARL, 2013 WL 3095010, at \*16 (E.D.N.Y. June 18, 2013), *aff'd*, 583 F. App'x 15 (2d Cir. 2014), which upheld a flat-out ban on absentee voting in certain elections. After recognizing that "[t]here is no constitutional right to an absentee ballot," *id.* (quoting *Obama for Am. v. Husted*, 697 F.3d 423, 439 (6th Cir. 2012)), the court found that any burdens from "the lack of an absentee ballot" was "minimal, at best." *Id.* And whatever burden existed was easily outweighed by the county's interest in avoiding the "extraordinary administrative expense" of offering absentee ballots. *See id.*

[10] For this reason, Plaintiffs' suggestion that this Court take a "fine comb" to the state interests asserted effectively concedes that a preliminary injunction is inappropriate on the current record. (*See* Dkt. 13-1:28.) That is, even if the Court were to accept Plaintiffs' suggestion that some level of heightened scrutiny is necessary, at this stage, the state's assertion of multiple legitimate interest is sufficient to defeat the preliminary injunction request, since that assertion—coupled with existing evidence in separate litigation—undercuts any likely success on the current claim.

analyzing burdens do not assess laws "standing alone," and instead examine any alleged burdens in the context of an electoral system as a whole. This means that even laws that might be viewed as severe "standing alone" may impose only a "limited burden" in light of the state's overall electoral system. *See Burdick*, 504 U.S. at 436, 439, 441; *see also Luft*, 963 F.3d at 671. Here there is no arguably severe burden, especially when the law is viewed in context of the overall scheme.

This relates to the second problem with Plaintiffs' argument: Wisconsin's overseas-voting law does not impose *any* burden, much less a severe one. Instead, even assuming some burden is a result of postal slow-downs, Wis. Stat. § 6.24(7) does not impose that burden.

For this reason, Plaintiffs' reliance on *Gallagher v. New York State Bd. of Elections*, No. 20 CIV. 5504-AT, 2020 WL 4496849, at *16 (S.D.N.Y. Aug. 3, 2020) is unhelpful. (*See* Dkt. 13-1:24.) *Gallagher* involved a challenge to a New York law that rendered invalid "a significant percentage" of ballots for lack of a postmark, despite evidence that the ballots had been mailed on time. *See id.*

Here, there is no allegation (much less proof) that Wisconsin's law is "render[ing] invalid" any ballots. *Id.* The Wisconsin law that Plaintiffs challenge simply allows overseas voters to cast an absentee ballot, to be returned like other absentee ballots—by mail. *See* Wis. Stat. § 6.24(7). The fact that Wisconsin's overseas-voting law does not allow ballots to be returned by email or fax or, for that matter, by text message or Snapchat, imposes no burden. *Cf. Griffin*, 385 F.3d at 1130 (rejecting absentee-voting challenge and musing on implications of the judiciary mandating previously unauthorized method of voting: "would [the state] then have to buy everyone a laptop . . . and Internet access?").

Plaintiffs' discussion of the state-interest side of the ledger does not help their argument. Most of their discussion assumes that Wisconsin can proffer nothing more than "a general interest

28

in seeing state laws enforced." (Dkt. 13-1:27; *see also* Dkt. 13-1:27–28.) As discussed above, Wisconsin has proffered—and proven—multiple important interests that are served by its current absentee voter regime, including its limits on fax and emailing. *See supra* § III.C.2. And a federal court of appeals has approved those interests as more than sufficient to sustain Wisconsin's absentee-voting laws.

Plaintiffs' arguments fail to show any likelihood of success on the merits.

**D.      The balance of equities, public interest, and the *Purcell* principle further counsel against a preliminary injunction.**

In addition to assessing irreparable harm and likelihood of success, courts considering a preliminary injunction must "balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief," as well as "the public consequences in employing the extraordinary remedy of injunction." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (citations omitted). The balance of equities and public interest (which "merge" in this case against government officials) strongly favor Defendants. *Nken v. Holder*, 556 U.S. 418, 435 (2009).

Changing Wisconsin's absentee ballot process now will severely disrupt the work of local elections officials; negatively impact the Wisconsin Elections Commission and Wisconsin voters; and impair the public interest. These harms are described in the declaration of Meagan Wolfe, the Administrator of the Commission. For example, the Commission does not have the authority to accept and count ballots, does not receive absentee ballots from voters, and has no infrastructure or statutory authority to receive ballots electronically from overseas voters. (Wolfe Decl. ¶ 11.) Further, the Commission is not familiar with how the DoD's fax system operates, and this process has never been tested or used in Wisconsin. (*Id*. ¶ 12.) Consequently, it is not feasible for the Commission to develop, test, and implement a secure email infrastructure as proposed by Plaintiffs

29

this close to the election, nor is the Commission able to assess the ballot security and logistics of the DoD fax system in Wisconsin. (*Id.* ¶¶ 11, 12, 17.) Lastly, there is no feasible way to preserve the anonymity of the voter's ballot through either email or fax. (*Id.* ¶ 14.)

Further, because Wisconsin elections are run in a decentralized manner through local clerks around the state—60% of which are part-time—it will be challenging to ensure that last-minute changes to the law are applied equally throughout the state. (*Id.* ¶ 16.) While the Commission can communicate any court-ordered changes to the laws to the clerks, the clerks administer the elections at the ground level. (*Id.* ¶¶ 5, 6.) There is no guarantee that 1,850 clerks will uniformly be able to adapt quickly to these changes.

In fact, absentee voting is already underway in Wisconsin, and 1,850 Wisconsin clerks are already in the midst of administering the election. (*Id.* ¶¶ 15–16.) Clerks who are busy administering absentee balloting and otherwise preparing for the election may not realize they need to establish, test, and implement a system of receiving these ballots via secure email or DoD fax, or they may not have sufficient staff to handle a new task added just for this election. (*Id.* ¶ 16.) And all municipalities may not treat overseas absentee ballots in the same manner. (*Id.*) There is no guarantee that an injunction could be implemented in a uniform manner statewide. (*Id.*) Plaintiffs' requested relief would thus create a new risk of disparate treatment of votes.

In addition, communicating these changes to voters will be difficult, and voters may be confused about what modes of transmission are now allowed to return absentee ballots. (*Id.* ¶ 15.) Most acutely, in-state absentee voters or absentee voters in a state outside of Wisconsin may believe they are also permitted to email or fax their absentee ballots to the municipal clerk. As one would expect, the information on the Commission's and clerks' websites references current law. (*Id.*) While some voters will hear about a court order, many will not.

30

In light of all of these considerations, weighed against Von Holzen's now-moot concerns about the efficacy of the mail, the balance of the equities here weighs unmistakably against an injunction.

Furthermore, "the Supreme Court has instructed that federal courts should refrain from changing state election rules as an election approaches." *Libertarian Party of Illinois v. Cadigan*, No. 20-1961, 2020 WL 5104251, at *4 (7th Cir. Aug. 20, 2020) (citing *Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 140 S. Ct. 1205, 1207 (2020), and *Purcell v. Gonzalez*, 549 U.S. 1, 4–5 (2006)). The type of mandatory injunctive relief that Plaintiffs now seek, three weeks before an election, is precisely the type of judicial action the Supreme Court counseled against in *Purcell*. The Fifth Circuit compiled a list of cases in which the Supreme Court stayed injunctions on voting requirements that were issued 52, 40, and 33 days before the election, observing that "[w]hile the Supreme Court has not explained its reasons for issuing these stays, the common thread is clearly that the decision of the Court of Appeals would change the rules of the election too soon before the election date." *See Veasey v. Perry*, 769 F.3d 890, 895 (5th Cir. 2014).

If this Court were to issue an order changing the status quo for returning absentee ballots now, it would leave the Commission and 1,850 municipal clerks with little time to establish a secure infrastructure to accept emailed or faxed ballots from overseas voters, inform voters of this new process, issue new guidance, and retrain staff. (*See* Wolfe Decl. ¶¶ 11–17.) A nearly inevitable appeal would mean additional days (or weeks) of uncertainty as the case was reviewed by the court of appeals and possibly the Supreme Court—all while overseas voters continue to return their absentee ballots. Any order from this Court in favor of Plaintiff Von Holzen could lull overseas absentee voters into complacency, believing that they need only email or fax their ballot before the Election Day deadline, only to find out on the eve of the election that an appellate court had

31

reached a different conclusion. That is exactly the chaos and confusion that the *Purcell* principle is meant to avoid.

A balancing of the equities, consideration of the public interest, and application of the *Purcell* principle demonstrates that an injunction is improper here. The Plaintiffs' motion should be denied.

**IV.    Plaintiffs abandon their equal-protection claim on preliminary-injunction briefing, and that claim should be dismissed as to Wisconsin since Wisconsin's law mandates equal treatment between overseas and stateside absentee voters.**

In their complaint, Plaintiffs alleged that Wisconsin's overseas-absentee voter regime violates the "one person, one vote," principle under the Equal Protection clause. (*See* Dkt. 1 ¶¶ 122–29.) In their preliminary injunction filings, they rightly abandon this claim. (*See generally* Dkt. 13-1–13-10.)

As Plaintiffs acknowledge, where a challenger alleges that an election law unreasonably burdens one group but not another, the *Anderson/Burdick* and equal-protection analyses "substantially overlap." *Green Party of New York State v. New York State Bd. of Elections*, 389 F.3d 411, 420 (2d Cir. 2004); (*see also* Dkt. 13-1:25 n.14.) Here, Plaintiffs provide no reason to engage in a separate equal protection analysis, and they have put forth no evidence that Wisconsin's absentee-voting law unreasonably burdens overseas voters in relation to the vast majority of voters. Nor could they, since the law Plaintiffs' challenge expressly provides that overseas voters' absentee ballots "shall be marked and returned, deposited and recorded in the same manner as other absentee ballots"—i.e., by mail, or delivered in person. Wis. Stat. §§ 6.24(7), 6.87(4)(b)1.

32

Because Plaintiffs abandon their equal-protection claim in the preliminary injunction filings, Wisconsin defendants do not address the likelihood of success on this claim, other than to note there is none, not only because they've forfeited the argument, but because the claim fails as a matter of law: overseas voters are treated the same as all other non-in-person absentee voters. *See* Wis. Stat. §§ 6.24(7), 6.87(4)(b)1.

The complaint's reference to "one person, one vote jurisprudence," including *Bush v. Gore*, 531 U.S. 98, 107 (2000), cannot save this claim. (*See* Dkt. 1 ¶¶ 123–26.) That jurisprudence refers to "arbitrary and disparate treatment" *by virtue of* state action or law. *See, e.g.*, *Bush*, 531 U.S. at 104–05. But Wisconsin's law exhibits no such arbitrariness or disparity. Nothing in the alleged functioning of Germany's mail system (or that of the United States, for that matter) alters how Wisconsin law treats absentee voters. *See Pers. Adm'r of Massachusetts v. Feeney*, 442 U.S. 256, 272 (1979) ("uneven effects upon particular groups within a class are ordinarily of no constitutional concern" where suspect classifications are not at issue); *see also Hayden v. Paterson*, 594 F.3d 150, 170 (2d Cir. 2010).

Plaintiffs' "one person, one vote" challenge to Wisconsin's overseas-absentee-voting laws fails to state a claim. If the Court were to reach this claim, it should be dismissed.

## CONCLUSION

For the reasons discussed, this Court should dismiss the claims against Wisconsin's

Elections Commissioners, or at the very least deny the preliminary injunction.

Dated this 9th day of October, 2020.

Respectfully submitted,

JOSHUA L. KAUL
Attorney General of Wisconsin

Electronically signed by:

s/ Gabe Johnson-Karp
GABE JOHNSON-KARP*
Assistant Attorney General
State Bar #1084731

BRIAN P. KEENAN
Assistant Attorney General
State Bar #1056525

ANTHONY D. RUSSOMANNO
Assistant Attorney General
State Bar #1076050

JODY J. SCHMELZER
Assistant Attorney General
State Bar #1027796

Attorneys for Defendants
Wisconsin Elections Commissioners

Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 267-8904 (GJK)
(608) 266-0020 (BPK)
(608) 267-2238 (ADR)
(608) 266-3094 (JJS)
(608) 294-2907 (Fax)
johnsonkarpg@doj.state.wi.us
keenanbp@doj.state.wi.us
russomannoad@doj.state.wi.us
schmelzerjj@doj.state.wi.us

*admitted pro hac vice

34

**CERTIFICATE OF SERVICE**

I certify that on October 9, 2020, I electronically filed the foregoing Brief of Wisconsin Elections Commissioners in Opposition to Preliminary Injunction with the clerk of court using the CM/ECF system, which will accomplish electronic notice and service for all participants who are registered CM/ECF users.

Dated this 9th day of October, 2020.


s/ Gabe Johnson-Karp
GABE JOHNSON-KARP
Assistant Attorney General