UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

Mathew Harley, et al.,

        *Plaintiffs*,

- against -

Peter S. Kosinski, et al.,

        *Defendants*.

Case No: 20-CV-4664

**DECLARATION OF DOUGLAS A. KELLNER**

    DOUGLAS A. KELLNER declares the following to be true and correct under penalty of perjury, pursuant to 28 U.S.C. § 1746:

    1.    I have served as Commissioner and the Co-Chair of the New York State Board of Elections ("State Board") since 2005. Before assuming my present position on the State Board, I was a commissioner of the New York City Board of Elections from 1993 until my appointment to the State Board in 2005. I also serve as the New York State representative to the Standards Board of the United States Election Assistance Commission.

    2.    I submit this this Declaration in opposition to plaintiffs' motion for a preliminary injunction. This Declaration is based upon my personal knowledge, including my review of records of the State Board and my familiarity with the New York State Election Law and procedures. I am fully familiar with the facts and circumstances set forth below.

    3.    Plaintiffs seek an order requiring New York election officials to "accept voted ballots from overseas voters that are sent via email or facsimile to the local election office (whether directly or through DoD Fax)." Plaintiffs are seeking on very short notice to change a voting procedure that has been the subject of consideration by state and federal officials for at

least a decade. Perhaps even more significant, plaintiffs grossly underestimate the challenges of implementing such a momentous change in the short time available and the potential unintended consequences.

4.  As explained in our memorandum of law and in the Declaration of Susan Greenhalgh, Congress did not mandate that the states provide for electronic return of voted ballots when it adopted the Uniformed Overseas and Citizens Absentee Voting Act ("UOCAVA"), 52 U.S.C. 20302 *et seq.*, as amended by the Military and Overseas Voters Empowerment Act ("MOVE"). Many of us responsible for New York's election procedures have concluded that allowing electronic return of voted ballots: (i) violates the fundamental public policy of the State of New York to preserve secrecy in voting, to prevent voter coercion and to thwart vote buying, and (ii) exposes votes to cyber threats that can steal a voter's vote and undermine confidence in the electoral system.

**NEW YORK'S IMPLEMENTATION OF THE MOVE ACT**

5.  The MOVE Act amendments to UOCAVA became effective October 29, 2009. One feature of the new law was the option for military and overseas voters to receive their absentee ballots electronically rather than by the traditional method of having the county board of elections mail the ballot to the overseas or military voter. We worked with the legislature and the governor's office to amend the New York Election Law to conform to the federal requirement. Included was a provision to allow absentee ballots from military and overseas voters to be counted as long as they were postmarked by the day before election day and received within thirteen days after the election.

6.  The New York State Board of Elections recognized immediately that it would be

difficult to comply with the requirement to transmit validly-requested absentee ballots to UOCAVA voters no later than 45 days before a federal election because New York's primary election was scheduled for the second week of September. New York initially applied for and received a waiver for the 2010 general election. The Federal Voter Assistance Project ("FVAP") within the US Department of Defense granted the waiver on condition that all ballots to military and overseas voters be mailed at least 32-days before the election and that New York count ballots postmarked by the day before election day and received within thirteen days after the election.

7. Notwithstanding the waiver, several counties' boards of elections were unable to comply with the relaxed deadline, leading the United States Department of Justice to file suit to enforce the new provisions of UOCAVA, *United States v. State of New York*, No. 10-cv-1214 (GLS)(NDNY)). We immediately began negotiating a consent decree and actively considered whether providing for electronic ballot return as well as electronic ballot delivery would be a factor to bring New York into compliance with the spirit of the MOVE Act. The consensus within the Board of Elections, informed by recommendations of good government and voter protection advocates was that electronic return of voted absentee ballots from overseas and military voters would create more problems than the underlying malady it sought to cure, while violating New York's constitutional requirement for voter privacy and the Legislature's determination not to allow any connection to the internet for voting equipment.

**SUPERSTORM SANDY**

8. The issue of electronic return of voted absentee ballots rose again in the response to Superstorm Sandy, which inundated New York on October 29, 2012, eight days before the presidential election. Several million New Yorkers were displaced from their homes, and dozens

of polling sites along the shores of Staten Island and Long Island suffered catastrophic damage. I and others at the State Board of Elections worked around the clock with the Governor's office, legislators and local officials to determine the best way to manage the election. We were well aware that New Jersey was proposing to allow voters to email or fax their voted ballots to election officials. We seriously considered whether New York should adopt similar procedures, but we concluded that there were far too many logistical problems, even if we were going to justify overlooking the constitutional and legal limitations on account of the emergency. Instead, we recommended and Governor Cuomo adopted the procedures allowing New Yorkers affected by the storm to vote anywhere in the state and have their ballot counted. N.Y. Executive Order No. 62

8. The Declaration and accompanying report of Rutgers Law Professor Penny Venetis bears out the substantial risks and chaos that can be generated by last minute undertakings with good intentions that are not thoroughly vetted and tested. New York's response to Superstorm Sandy allowed almost a half million New Yorkers to have their vote counted through the emergency procedures requiring paper ballots, without the chaos and unintentional disenfranchisement that occurred as a consequence of New Jersey's ill-conceived decision to allow email and fax return of voted ballots.

**HASTE MAKES WASTE**

9. New York has not been flawless in addressing emergency conditions. Two recent examples in New York City illustrate why it is necessary to plan, design and test new voting systems, even when to the uninformed it would appear to be a simple process.

10. Tens of thousands of voters in New York City did not receive their absentee ballots in time to return them for the primary election held on June 23, 2020. I have personally

investigated this issue and I have concluded that the New York City Board of Elections did not plan for adequate capacity to address the ten-fold increase in applications for absentee ballots. By the time the New York City Board realized it could not handle the torrent, it was too late for them to solve the problem.

11. There has been considerable attention in the press and among public officials about the recent disclosure that as many as 99,000 voters in Brooklyn may have received absentee ballot oath envelopes with the wrong name pre-printed on the envelope. Fortunately the error was discovered early enough to be corrected without creating a significant risk of disenfranchising voters. The error, however, was a consequence of the rush to use new technology to meet the increased number of requests for absentee ballots without adequate testing and oversight.

12. In my twenty-seven years, first as commissioner at the New York City Board of Elections, and now as Co-Chair of the New York State Board of Elections, I have witnessed the switchover to numerous new technologies and procedures for voting. Often what appears easy on its face can be very complex to implement properly. One example: When running for election as governor, Andrew Cuomo pledged to implement on-line voter registration. In his inaugural address Governor Cuomo confirmed his commitment to online voter registration and directed the Department of Motor Vehicles to immediately begin working with the State Board of Elections to implement such a system. Those who did not understand the computer systems thought it would be easy. In fact, however, it took many, many months to make the system operational, and another year after that to resolve glitches and to make it user-friendly and efficient for the county boards of elections who process voter registration transactions.

13. There is no existing process or procedure by which New York's 58 boards of

elections—already burdened with the demands of implementing the unfolding election—can secretly or securely receive ballot attachments to emails and make them ready for canvassing. Cobbling a process together and fashioning new rules on electronic return even has the potential to cause ballots not to be counted. Last minute instructions often lead to errors in implementation. If policy makers were to determine that New York should allow for electronic return of voted ballots, it would take many months to properly plan and design such a system, to acquire the additional equipment needed to handle the anticipated volume, to train staff, to educate voters, and most importantly, to test the system to resolve the inevitable bugs. That cannot be done in the time available.

**PAY ATTENTION TO THE SCIENCE**

14. The overwhelming consensus of computer scientists is that there is no technology that allows for the secure delivery of voted ballots by electronic means. I have urged all policy-makers to pay attention to the science. The risks of electronic delivery of voted ballots far, far outweigh any benefit to make it more convenient for voters. Many people have asked me why, if we can bank on line, can't we vote online? The experts have explained that the big difference lies in the need to maintain ballot secrecy. If a bank transaction is fraudulently hacked, the money is missing and the bank's technicians can work to trace the loss. (And banks lose hundreds of billions every year in fraudulent or hacked transactions.) On the other hand, if a vote is fraudulently changed, neither the voter on the sending end nor the election official on the receiving end knows that the vote has been changed. I have preached that there are four core values to election administration: accuracy, uniformity, transparency and verifiability. We should pay attention to the expert analysis of complex electronic computing transactions and respect the science as we design our voting systems. Given the current technology there is no safe and

accurate way to provide for electronic return of voted absentee ballots while maintaining the secrecy of the ballot.

For all of the foregoing reasons, I respectfully request that the Court deny plaintiffs' motion for a preliminary injunction.

Dated: October 9, 2020
New York, New York

*Douglas A. Kellner*
―――――――――――――――
Douglas A. Kellner