UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| Mathew Harley , et al., <br><br> *Plaintiffs*, <br><br> - against - <br><br> Peter S. Kosinski, et al., <br><br> *Defendants*. | Case No: 20-CV-4664 <br><br> **DECLARATION OF SUSAN DZIEDUSZYCKA-SUINAT** |

SUSAN DZIEDUSZYCKA-SUINAT declares the following to be true and correct under penalty of perjury, pursuant to 28 U.S.C. § 1746:

1. I serve as the President and Chief Executive Officer of U.S. Vote Foundation and our Overseas Vote Initiative. The foundation directly supports US citizens with election information and voter services; and licenses its civic tech and data to developers interested in creating their own civic tech tools and services. In 2004, I created the first online voter registration/ballot request tool for overseas and military voters. Since then our nonpartisan, nonprofit, public services organization, Overseas Vote Foundation, became a force of change in the cause of overseas and military voter empowerment. 2012 heralded a domestic US voting effort that could match the breadth of services offered to overseas voters: U.S. Vote Foundation is now the main brand and online destination for the foundation. I have consulted many states to assist them in setting up their systems needed to comply with the Military and Overseas Voter Empowerment Act (MOVE Act) adopted in 2010.

2. I submit this declaration to oppose the motion for a preliminary injunction that would require seven states to allow for electronic or fax return of voted ballots. We support making

1

it as easy as possible for citizens living abroad to register and vote. Nevertheless, the Court should deny plaintiffs' motion at this late date in the election process. To do otherwise would spread enormous confusion among overseas voters, would unduly burden election officials to introduce a new method of voting without adequate time for testing, and would further spread unsecure, hackable methods of voting to even more voters.

3. The 2020 election is predicted to yield a record turnout. This is already evident by the unprecedented demand for all forms of voting, in particular absentee and other mail-in options. This extraordinary demand is taking place in jurisdictions across the country as the impact of the current pandemic, as well as the perceived criticality of the election, is already yielding large numbers of mail-in ballots a full month ahead of Election Day.

4. The unfortunate state of the US Postal Service and the potential for delays in the delivery of all forms of mail-in ballots has accelerated efforts by election officials, voting outreach organizations, and both major political parties to encourage voters to mail in their ballots as early as possible, further increasing the demand for local election resources precisely at a time when resources have been limited by manpower-related issues due to the impact of the pandemic.

5. Due to this sudden new emphasis on voting by mail, local election officials are currently struggling with significant changes in election procedures and processes. These changes are due to the many legislative and regulatory changes that have recently been mandated in order to facilitate voting without endangering the public by forcing them to stand in line at polling places.

6. Local election officials in many jurisdictions are struggling to find the funding to meet these new obligations, and to date Congress has been unable to allocate more funding to meet the increased demand in services.

7. The emphasis on facilitating mail-in voting is due to the well-established fact, based

on years of practice across the country, that this is a safe and secure method of enabling citizens to vote without endangering the integrity of the vote or exposing personally identifiable information about individual voters.

8. Electronic methods of voting, including the methods proposed by the plaintiffs, have been shown to be significantly less secure, and have the potential to reveal both the personal information of the voter as well as expose voter's ballots to tampering. In particular, electronic ballots have been shown to be less secure, and harder to trace and audit, than paper ballots.

9. We acknowledge that there are exceptions granted under special circumstances that allow some versions of electronic voting to be available, but these methods have been honed over many years of practice and are only used on a limited basis. Based on our collaboration with state and local election officials, we know that it takes months, and sometimes years, to set up new systems for communicating with voters and administering elections. There needs to be adequate equipment and capacity to handle anticipated volume—otherwise the system is susceptible to crash. The system also needs to be designed so that if it does crash, critical voter data is not lost or compromised. Any new system needs to be thoroughly tested before it is ready for general use. This is simply impossible to implement properly just weeks before an election.

10. We are also well aware that the overwhelming consensus among computer scientists is that given the current technology, it is literally impossible for a voter to cast a secret ballot when it is transmitted electronically and at the same time guarantee that the ballot received and counted by the local election official is the same as that cast by the voter. We have advised many state and local election officials that they should not overlook this threat to the security of ballots cast by overseas and military voters, and that the should take more seriously the expert guidance given to them by the Department of Homeland Security and the National Institute of

Standards and Technology.

11. We believe there is still time for voters to use the voting methods currently available to them and cast their ballots on time. Given the widespread disagreement about the integrity of electronic voting and the broad agreement about the integrity of paper ballots, the court should not feel obliged to adjudicate an issue, particularly in favor of the plaintiffs, when a large number of experts and organizations such as U.S. Vote Foundation believe the proposed methods are simply not safe for widespread use.

12. With these considerations in mind, we at U.S. Vote Foundation urge the Court to deny plaintiffs' motion. Accommodating electronic ballot submission with literally days to go before the election would pose an additional, and unacceptable burden on election officials across the country who are already stretched too thin by the sudden increase in mail-in ballots and the changes entailed by this shift. For many election officials, and voters, the proposed changes would require the mastery of yet another set of processes for security and ballot integrity that are not only foreign to them, but themselves do not guarantee to support the same level of integrity and security that a paper ballot provides. This issue of ballot integrity cannot be overemphasized: despite popular misconceptions, email, fax, and other forms of electronic submission are much easier to intercept, alter and otherwise render invalid than paper ballots.

Dated: October 8, 2020
      Munich, Bavaria, Germany

*/s/ Susan Dzieduszycka-Suinat*

_____
    Susan Dzieduszycka-Suinat