**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Mathew Harley, Damali L'Elie, Michael Maniates, Emily McGrath, Susan Lahey, N.H. Quaide Williams, Jessica Roitman, Katie Von Holzen, Benjamin Cole and Ryan Burruss, *individually, and on behalf of all others similarly situated,*<br><br>　　　　　　　　　　　　　　　　　*Plaintiffs*<br><br>　　　　　　v.<br><br>**New York**[1]<br>Peter S. Kosinski, Andrew Spano, and Douglas Kellner *in their official capacities as Commissioners of the New York State Board of Elections*, Todd D. Valentine and Robert A. Brehm *in their official capacities as Co-Executive Directors of the New York State Board of Elections*,<br><br>[*Defendants Continue on Following Page*]<br><br>　　　　　　　　　　　　　　　　　*Defendants*. | **Docket No. 20-cv-4664-BMC** |

---

**PLAINTIFFS' REPLY MEMORANDUM OF LAW**
**IN SUPPORT OF THEIR MOTION FOR A PRELIMINARY INJUNCTION**
**AND IN OPPOSITION TO THE KENTUCKY DEFENDANTS' MOTION**

---

Jonathan Wallace, *of counsel*
J. Remy Green
**COHEN&GREEN P.L.L.C.**
1639 Centre Street, Suite 216
Ridgewood, New York 11385
remy@femmelaw.com

*Attorneys for Plaintiffs*

October 11, 2020

---

[1] The labels here and on the following page are for readability and clarity alone. The States themselves are not defendants in any capacity, but defendants include the *Ex Parte Young* parties for an as-applied challenge to each State's election law and the State's interpretation and application of that law.

*Defendants, Continued*

**Pennsylvania**
Kathy Boockvar *in her official capacity of Secretary of the Commonwealth of Pennsylvania*, Jonathan Marks *in his official capacity as Deputy Secretary for Elections and Commissions*, and Jessica Mathis *in her official capacity as Director of the Bureau of Election Services*.

**Ohio**
Frank LaRose *in his official capacity as Secretary of the State of Ohio,*

**Texas**
Ruth Hughes *in her official capacity as Secretary of State of Texas,*

**Kentucky**
Albert Benjamin Chandler *in his official capacity as Chairman of the Kentucky Board of Elections,* and Michael Adams *in his official capacity as Kentucky Secretary of State*,

**Wisconsin**
Ann S. Jacobs *in her official capacity as Chair of Wisconsin Elections Commission*, Mark L. Thomsen *in his official capacity as Vice Chair of the Wisconsin Elections Commission*, Marge Bostelmann *in her official capacity as Secretary of the Wisconsin Elections Commission*; and Julie Glancey, Dean Knudson, and Robert Spindell, Jr *in their official capacities as Commissioners of the Wisconsin Elections Commission*,

**Georgia**
Brad Raffensperger *in his official capacity as the Secretary of State of Georgia*.

ii

**TABLE OF CONTENTS**

TABLE OF CONTENTS.................................................................................................i

TABLE OF AUTHORITIES .........................................................................................ii

PRELIMINARY STATEMENT ................................................................................... 1

FACTUAL SUPPLEMENT ......................................................................................... 2

ARGUMENT................................................................................................................. 2

    I.    *Purcell* Does Not Apply Here..................................................................... 2

    II.    Plaintiffs Have Standing. ..................................................................... 5

    III.    Jurisdiction and Venue Are Proper. ................................................... 6

    IV.    The Court Should Reject Any Assertion that Plaintiffs Sued the Wrong Parties. ........... 8

    V.    Joinder Was Proper. ............................................................................ 9

    VI.    Balancing of the Kind Defendants Suggest is Inappropriate in a Voting Rights Case, But Any Burden on Defendants is Minimal Anyway............................................................. 10

CONCLUSION............................................................................................................ 13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bates v. C & S Adjusters, Inc.*,
   980 F.2d 865 (2d Cir. 1992)............................................................................................8

*Bridgeman v. McPherson*,
   141 Cal. App. 4th 277 (Court of Appeal Ca. 2006), *rev. denied*, 2006 Cal.
   LEXIS 11490 (2006)......................................................................................................11

*Common Cause Ind. v. Lawson*,
   2020 U.S. Dist. LEXIS 176927 (SD In. 2020) ...............................................................9

*Common Cause Ind. v. Lawson*,
   2020 U.S. Dist. LEXIS 179161 (S.D. In. 2020) ..............................................................4

*Common Cause R.I. v. Gorbea*,
   970 F.3d 11 (1st Cir. 2020), *stay denied* 207 L. Ed. 2d 1154 (2020) ..........................3

*Credico v. New York State Bd. of Elections*,
   2013 U.S. Dist. LEXIS 109737 (EDNY 2013).................................................................6

*Curling v. Raffensperger*,
   2020 U.S. Dist. LEXIS 177731 (ND Ga. 2020) ............................................................10

*Democratic Nat'l Comm. v. Bostelmann*,
   Nos. 20-2835, 20-2844, 2020 U.S. App. LEXIS 31950 (7th Cir. Oct. 8, 2020)
   (Rovner, J., dissenting) ..............................................................................................2, 3

*Democratic Party of Ga., Inc. v. Crittenden*,
   347 F. Supp. 3d 1324 (ND Ga. 2018) ..............................................................................5

*Donohue v. Board of Elections of New York*,
   435 F. Supp. 957 (E.D.N.Y. 1976) ..................................................................................9

*Gallagher v. N.Y. State Bd. of Elections*,
   2020 U.S. Dist. LEXIS 138219 (SDNY 2020).........................................................5, 6, 9

*Green Party of New York v. Weiner*,
   216 F. Supp. 2d 176 (S.D.N.Y. 2002)..............................................................................9

*Hango v. Royall*,
   466 Fed. Appx. 30 (2d Cir. 2012)....................................................................................8

*Johnson v. City of New York (In re Coronavirus/COVID-19 Pandemic)*,
   2020 U.S. Dist. LEXIS 58729 (SDNY 2020)..................................................................11

*Jones v. United States Postal Serv.*,
  2020 U.S. Dist. LEXIS 172430 (SDNY 2020)....................................................................5, 7

*Kehr v. Yamaha Motor Corp.*,
  596 F. Supp. 2d 821 (S.D.N.Y. 2008)..................................................................................8

*Keller v. Pfizer, Inc.*,
  2018 U.S. Dist. LEXIS 191174 (MD Pa. 2018) ................................................................11

*Lemon v. Kurtzman*,
  411 U.S. 192 (1973).........................................................................................................12

*Lerman v. Board of Elections*,
  232 F.3d 135 (2nd Cir. 2000), cert. den. 533 U.S. 915 (2001) ..........................................6

*Lewis v. Hughs*,
  2020 U.S. App. LEXIS 28446 (5th Cir. 2020) ...................................................................9

*Longines-Wittnauer Watch Co. v. Barnes & Reinecke, Inc.*,
  15 N.Y.2d 443, 458 (1965) ...............................................................................................7

*Mays v. LaRose*,
  951 F.3d 775 (6th Cir. 2020) .............................................................................................5

*NAACP v. E. Ramapo Cent. Sch. Dist.*,
  2020 U.S. Dist. LEXIS 95300 (SDNY 2020)......................................................................4

*One Wis. Inst., Inc. v. Nichol*,
  186 F. Supp. 3d 958 (W.D. Wis. 2016) ..............................................................................5

*Plastic Surgery Group, P.C. v. United Healthcare Ins. Co. of N.Y., Inc.*,
  64 F. Supp. 3d 459 (EDNY 2014) ......................................................................................9

*Purcell v. Gonzalez*,
  549 U.S. 1 (2006)..................................................................................... *passim*

*Richmond Tenants Org., Inc. v. Kemp*,
  956 F.2d 1300 (4th Cir. 1992) ........................................................................................12

*Self Advocacy Sol. N.D. v. Jaeger*,
  2020 U.S. Dist. LEXIS 97085 (D.N.D. 2020) ....................................................................4

*Tex. Democratic Party v. Abbott*,
  2020 U.S. Dist. LEXIS 94953 (WD Tx. 2020)....................................................................6

*Thorsen v. Sons of Norway*,
  996 F. Supp. 2d 143 (EDNY 2014) ....................................................................................7

*Trump v. Int'l Refugee Assist. Project*,
  137 S. Ct. 2080 (2017) (per curiam) ......................................................................12

*U.S. Student Ass'n Fdn. v. Land*,
  546 F.3d 373 (6th Cir. 2008) ...................................................................................4

*Verragio, Ltd. v. SK Diamonds*,
  2017 U.S. Dist. LEXIS 68422 (SDNY 2017)...........................................................7

**Statutes**

28 U.S.C. § 1391(b)(2) ....................................................................................................7, 8

**Other Authorities**

1883 March 3, *The Gloucester Citizen*, General Intelligence, Quote Page 3,
  Column 5, Gloucestershire, England. (British Newspaper Archive), cited in
  *Quote Investigator* https://quoteinvestigator.com/2017/06/17/pianist/ ...................2

CPLR 302(a)(1) ...............................................................................................................6, 7

See Nicholas Stephanopoulos, *Freeing Purcell from the Shadows*, Election Law
  Blog (Sept. 27, 2020) ...............................................................................................3

iv

## PRELIMINARY STATEMENT

In opposing Plaintiffs motion (and, for the Kentucky Defendants, in making their own motion), nearly all the Defendants advance a handful of similar arguments arguments:  that the case is brought too close to the election under *Purcell;* that Plaintiffs lack standing; that jurisdiction and venue are not proper in the Eastern District of New York; and that Plaintiffs are not entitled to relief on a balancing of the equities or cannot show irreparable harm.  In addition, certain Defendants assert that Plaintiffs have not sued the  proper party, on the apparent argument that the state Board of Elections or Secretary of State does not exercise any control over the numerous county or local entities responsible for receiving mailed in ballots.

These arguments should ultimately be unavailing.  *Purcell*, by its own facts, is inapplicable to this matter; Plaintiffs' Article III standing to bring this action is straightforward and clear (not only in the Second Circuit but in the non-New York Defendants' home jurisdiction); jurisdiction and venue are proper in the Eastern District of New York under New York's long arm statute because Defendants knowingly, rejecting other choices, placed Election Mail into a "stream of commerce" passing through the Eastern District to Overseas Americans, resulting in harm caused by delays and rejections including slowdowns and the rejection of ballots with "Nixie" stamps at the International Service Center at JFK Airport; each State's collection of Defendants has sufficient control of the relevant systems to be the appropriate *Ex Parte Young* party; and that the ultimate burden on Defendants of any preliminary injunction would be slight.

Finally, as a threshold matter, given the volume of Defendants' filings and the very short period of time for Reply, Plaintiffs ask the Court to read this Reply generously – Plaintiffs are not knowingly failing to respond to any material issue raised by Defendants, but are doing the

best they can.[2]

## FACTUAL SUPPLEMENT

Plaintiffs have submitted two addition declarations with this Reply.  Those declarations include specific examples of Nixie rejections from JFK (*see* Burch Dec., Ex. A).  They also detail how allowing international voters the option in these last weeks of the election of returning their ballots by email or fax will not cause any confusion.  Burch Dec. ¶¶ 4-5.  In short, it is not particularly difficult for voters to scan a document into a PDF to attach to an email; most voters know how to do that.  *Id.*  And for voters who are not able to make a PDF, finding someone to help solve that problem is highly preferable to disenfranchisement.  *Id.*  This is an election where voters abroad are more tuned in than ever, because the pandemic has made voting virtually impossible for some, and incredibly difficult for others.  Thus, being told, "given the pandemic your state has offered an extra option, just in case," will not be confusing (but being told "mail is currently unavailable to you, but you cannot vote any other way" might be).  *Id.* ¶¶ 5-7.

## ARGUMENT

### I.      *Purcell* **Does Not Apply Here.**

"In all of two sentences, *Purcell* articulated not a rule but a caution: take care with last-minute changes to a state's election rules, lest voters become confused and discouraged from voting."  *Democratic Nat'l Comm. v. Bostelmann*, Nos. 20-2835, 20-2844, 2020 U.S. App. LEXIS 31950, at \*15 (7th Cir. Oct. 8, 2020) (Rovner, J., dissenting) (*Bostelmann* concerned an order that very well could confuse voters:  a changing requirement for witness signatures).  Those sentences noted that "Court orders affecting elections, especially conflicting orders, can

---

[2] "At a recent meeting of the Paris Pen and Pencil Club, Oscar Wilde said that when he was at Leadville, at a miners' hall, he noticed a placard over the piano to the following effect:  'Please don't shoot at the pianist, he is doing his best.'"  1883 March 3, *The Gloucester Citizen*, General Intelligence, Quote Page 3, Column 5, Gloucestershire, England. (British Newspaper Archive), cited in *Quote Investigator* https://quoteinvestigator.com/2017/06/17/pianist/

themselves result in voter confusion and consequent incentive to remain away from the polls.  As an election draws closer, that risk will increase." *Purcell v. Gonzalez,* 549 U.S. 1, 4-5 (2006).

Since then, *Purcell*'s doctrinal development has been limited largely to the so-called "shadow docket":  the Supreme Court's largely unwritten series of stay decisions.  See Nicholas Stephanopoulos, *Freeing Purcell from the Shadows*, Election Law Blog (Sept. 27, 2020) ("[d]espite all of this activity, the Purcell principle remains remarkably opaque").  As Judge Rovner observed in a recent dissent, then, "[u]ntil the Supreme Court gives us more guidance than *Purcell* and an occasional sentence or two in its stay rulings have provided, all that lower courts can do—and, I submit, must do—is carefully evaluate emergent circumstances that threaten to interfere with the right to vote and conscientiously evaluate all of the factors that bear on the propriety of judicial intervention to address those circumstances, including in particular the possibility of voter confusion." *Bostelmann*, 2020 U.S. App. LEXIS 31950, at *16-17.

*Purcell* is ultimately inapplicable to this case, for two related reasons:  (1) allowing some international voters the *option* of returning ballots electronically does not cause any voter confusion; and (2) even if it did, the confusion would be quite tolerable, since the alternative to being slightly confused would be not being able to vote at all, thus total disenfranchisement.  In other words, it is only a minimal problem, in this day and age, for an absentee voter in creating a PDF scan of a ballot and attaching it to an email, even if some slight confusion may be involved, far outweighs the alternative, of her vote not being received and counted. Disenfranchisement is *not* preferable to confusion.

*Purcell* in fact has frequently been distinguished by federal courts considering injunctive relief.  *Common Cause R.I. v. Gorbea,* 970 F.3d 11, 17 (1st Cir. 2020), *stay denied* 207 L. Ed. 2d 1154 (2020) ("Because of the unusual -- indeed in several instances unique -- characteristics of

3

this case, the *Purcell* concerns that would normally support a stay are largely inapplicable, and arguably militate against it"); *NAACP v. E. Ramapo Cent. Sch. Dist.,* 2020 U.S. Dist. LEXIS 95300, *6-7 (SDNY 2020) ("Here, there is no complication or confusion … There is no change of wording or election protocols; due dates and procedures for returning mail-in ballots are unchanged; no ballots need to be reprinted; no polling place personnel must be trained or retrained"); *Common Cause Ind. v. Lawson,* 2020 U.S. Dist. LEXIS 179161, *62 (S.D. In. 2020) ("the primary concern addressed in *Purcell*, namely, that altering election rules or issuing conflicting court orders … can create voter confusion and lead to decreased turnout at the polls (or, in this case, a disincentive to vote by absentee ballot), is not implicated by the injunction requested here by Plaintiffs"); *Self Advocacy Sol. N.D. v. Jaeger,* 2020 U.S. Dist. LEXIS 97085, *32 (D.N.D. 2020) ("The concerns that troubled the Supreme Court in *Purcell* are not present in this instance. A voter filling out an absentee ballot will be entirely unaffected by an order enjoining the signature-matching requirement").  And it is important to note that *Purcell* merely presents the temporal nearness of the election as one factor to be weighed by the court—and sets no bright line as to what dates are too close to an election for court action.  Relief has been granted far closer to elections than this case, consistent with *Purcell*.  *See, e.g., U.S. Student Ass'n Fdn. v. Land*, 546 F.3d 373, 387-89 (6th Cir. 2008) (six days before election).

Defendants' invocation of *Purcell* is ultimately an attempt to speak an election law shibboleth.  But there is no real confusion or "consequent incentive to remain away from the polls" that would be worked by injunctive relief here.  549 U.S. at 4-5.  Plaintiffs only seek relief relating to voters abroad, who – because of the pandemic this year – are not voters who will be going to the polls in the traditional sense *at all*.  Thus, the concern about an "incentive to remain away from the polls" is largely inapplicable.  On the other side of the scale, consider the voters

4

the relief here will be most impactful for – voters who cannot send *any* mail to the United States right now and voters who receive Nixies in the coming weeks.  Such voters will be (unlike voters in the classic *Purcell* situation) *actively* seeking out information about how they can vote, and without relief from the Court will receive a far more confusing answer:  that their vote cannot be cast.  In sum, *Purcell* only applies if the Court treats it – by overreading the tea leaves in the Supreme Court's shadow docket – as a hard and fast rule prohibiting judicial intervention close to an election.

## II.      Plaintiffs Have Standing.

While outcomes differ on the application of *Anderson-Burdick* and preliminary injunction standards, a strong consensus has been reached by courts everywhere in the United States, including most of the Defendants' own jurisdictions, about the standing of voters wishing to mail their ballots in without impediment.  *See, e.g., Gallagher v. N.Y. State Bd. of Elections,* 2020 U.S. Dist. LEXIS 138219, *33 (SDNY 2020) ("the Court concludes that Plaintiffs and Plaintiff-Intervenors have standing to challenge the enforcement of § 8-412's postmark requirement in the June 23 Primary"); *Jones v. United States Postal Serv.,* 2020 U.S. Dist. LEXIS 172430, *37 (SDNY 2020) ("Voter Plaintiffs have shown a 'substantial risk' that the ballots of voters in certain regions are less likely to be counted because of delayed mail service"); *Mays v. LaRose,* 951 F.3d 775, 781 (6th Cir. 2020) ("Because a combination of Ohio's deadline for requesting an absentee ballot and the State's confinement of Plaintiffs caused their inability to vote, Plaintiffs have standing to bring their claims"); *Democratic Party of Ga., Inc. v. Crittenden,* 347 F. Supp. 3d 1324, 1338 (ND Ga. 2018) ("the Court finds that Plaintiffs sufficiently allege injury-in-fact under both an organizational and associational standing theory"); *One Wis. Inst., Inc. v. Nichol,* 186 F. Supp. 3d 958, 966 (W.D. Wis. 2016)  ("Requiring a registered voter either to produce photo identification to vote in person or to cast an absentee … ballot is an injury sufficient for

standing."); *Tex. Democratic Party v. Abbott,* 2020 U.S. Dist. LEXIS 94953, *72 (WD Tx. 2020) ("This Court concludes that Plaintiffs have standing in this case because they all face an imminent risk of harm, the harm they face is fairly traceable to Defendants' conduct, and that harm is redressable by this Court").

Two Defendants have asserted that they have already received ballots from a Plaintiff. These Plaintiffs do not lose standing because they will be constrained to vote by absentee ballot in future elections so long as they continue to live overseas, and their claims are therefore capable of repetition while evading review. *Lerman v. Board of Elections,* 232 F.3d 135, 141 (2nd Cir. 2000), cert. den. 533 U.S. 915 (2001) ("the challenged action was too short to be fully litigated prior to its expiration, and there is a reasonable expectation that the same complaining parties would be subject to that same action in the future"); *Credico v. New York State Bd. of Elections,* 2013 U.S. Dist. LEXIS 109737, *41 (EDNY 2013) (ballot access case "a perfect example of a dispute that cannot be fully litigated prior to its cessation or expiration").

All Plaintiffs have standing to bring this action, for these and the reasons discussed in the opening brief.

### III.    Jurisdiction and Venue Are Proper.

Personal jurisdiction over all Defendants is CPLR 302(a)(1) (New York's longarm statute) in that all Defendants "transact[] … business within the state".

As New York's Federal Courts have observed on two recent occasions, election officials across the country enter into partnerships with the United States Postal Service for the delivery of election mail, including absentee ballots. *Gallagher v. N.Y. State Bd. of Elections,* 2020 U.S. Dist. LEXIS 138219, *39 (SDNY 2020) ("Whereas the USPS is merely 'a conduit' and 'delivery service' … with which the NYSBOE has partnered … Defendants possess the ballots and can count them (or direct that they be counted), and in doing so, cure any violation of Plaintiffs' and

6

Plaintiff-Intervenors' voting rights"); *Jones v. United States Postal Serv.,* 2020 U.S. Dist. LEXIS 172430, *45-46 , *56 (SDNY 2020) ("the USPS has affirmatively held itself out as a partner to state and local election authorities, and recognizes that it is a crucial player in the election [nationwide]";  "states are relying on USPS as a 'vital partner in administering a safe, successful election'").

Since the Defendants and the States they represent have elected to use the United States Postal Service as the primary means for the return of absentee ballots by Overseas Americans, (contrary to the practice of numerous other states that allow submission by email or fax), Defendants are forcing all Plaintiffs' ballots through a sometimes fatal bottleneck at the JFK Airport International Service Center.  Jurisdiction is therefore proper in New York, as these facts satisfy the requirements set by the New York State Court of Appeals in *Longines-Wittnauer Watch Co. v. Barnes & Reinecke, Inc.*:  there is a "substantial connection with New York [which] does not offend traditional notions of fair play and substantial justice."  15 N.Y.2d 443, 458 (1965) (cleaned up).  Further, the facts of this case closely resemble those in "stream of commerce" cases, where federal courts have asserted jurisdiction under CPLR Section 302(a)(1), (*see, e.g., Verragio, Ltd. v. SK Diamonds,* 2017 U.S. Dist. LEXIS 68422, *13 (SDNY 2017)), as well as other cases in which federal courts here have found that acts outside the jurisdiction have a "substantial connection" inside.  *Thorsen v. Sons of Norway,* 996 F. Supp. 2d 143, 157-158 (EDNY 2014) ("faulty investigation" of circumstances by defendants constituted "contacts with New York.... of the quantity or quality necessary to establish specific personal jurisdiction under Section 302(a)(1)").

Because of the substantial connection between the slowdowns and Nixie-generating events at JFK Airport, venue is also proper under 28 U.S.C. § 1391(b)(2), which provides that an

7

action may be brought in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." *Hango v. Royall,* 466 Fed. Appx. 30, 33 (2d Cir. 2012) ("venue was proper under 28 U.S.C. § 1391(b)(2) because 'a substantial part of the events or omissions' giving rise to Hango's claims occurred at John F. Kennedy Airport, located within the Eastern District of New York"); *see also Bates v. C & S Adjusters, Inc.*, 980 F.2d 865, 868 (2d Cir. 1992) (sending of relevant paper into the jurisdiction: "The most relevant evidence--the collection notice--is located in the Western District of New York").

Thus, jurisdiction and venue are proper in New York.

Finally, given the nature of the case and the timeline here, a brief addition note is appropriate. It is, of course, possible for a Court to have jurisdiction but nonetheless find venue is improper. In such a circumstance, the Court does not lack power to act. And, as explained in Plaintiffs' show cause letter (ECF No. 12), if this case were not being litigated on this timeline and assuming it were severed and transferred, it would likely subsequently be consolidated by the Multi-District Litigation Panel. Since the entirety of this case likely amounts to litigation of the preliminary injunction, "[i]t would surely be a waste of judicial resources to now sever the claims of these … plaintiffs into [seven] separate cases, begin separate discovery and trial preparation and discovery, only to have [all seven] cases then transferred to an MDL judge." *Kehr v. Yamaha Motor Corp.*, 596 F. Supp. 2d 821, 826 (S.D.N.Y. 2008). The Court could, prior to severance (if it finds severance appropriate), grant an injunction under its broad equity powers.

### IV.    The Court Should Reject Any Assertion that Plaintiffs Sued the Wrong Parties.

The "wrong party" argument, in the *Anderson-Burdick* context, is frequently tossed at the wall, and just as frequently rejected. The officials here are the officials with control of the election apparatuses in their respective states, and all have the power to enact any relief the Court

8

grants.  No more is required of an *Ex Parte Young* defendant.

"[T]he argument that every local board of elections must be joined when challenging statewide election restrictions has been consistently rejected by courts in this Circuit." *Gallagher v. N.Y. State Bd. of Elections,* 2020 U.S. Dist. LEXIS 138219, *36 (SDNY 2020), *citing Schulz v. Williams*, 44 F.3d 48, 61 n.13 (2d Cir. 1994); *Green Party of New York v. Weiner*, 216 F. Supp. 2d 176, 180 (S.D.N.Y. 2002); *and Donohue v. Board of Elections of New York*, 435 F. Supp. 957, 963 (E.D.N.Y. 1976).

Courts in other jurisdictions reach the same result.  *See, e.g., Lewis v. Hughs*, 2020 U.S. App. LEXIS 28446, *2  (5th Cir. 2020) ("no substantial question exists in this matter with respect to whether the Texas Secretary of State bears a sufficient connection to the enforcement of the Texas Election Code's vote-by-mail provisions to satisfy *Ex parte Young*'s 'some connection' requirement."); *Common Cause Ind. v. Lawson,* 2020 U.S. Dist. LEXIS 176927, *8 (SD In. 2020) ("Additionally, this and other courts in this District have recognized that election officials are proper defendants in suits challenging election laws").

Plaintiffs have sued the correct parties (and if this were not so, this Court could grant leave to amend, since there would be no prejudice, given that all the relevant State's governments are clearly aware of the suit). *Plastic Surgery Group, P.C. v. United Healthcare Ins. Co. of N.Y., Inc.,* 64 F. Supp. 3d 459, 472 (EDNY 2014) ("There is no basis to deny plaintiff leave to amend to add the proper party")).

## V.      **Joinder Was Proper.**

In response to the arguments raised on joinder, Plaintiffs incorporate by reference their arguments on joinder made in their Letter in response to the Court's Show Cause Order (ECF No. 12).  In sum, while the laws of seven different States are technically at issue, those laws all produce a single result:  voters abroad cannot return a ballot except through physical mail – and

9

amid the pandemic, that often means they cannot return a ballot at all.  In resolving the issues here, then, the Court need only answer one legal question to resolve this case fully: is that result Constitutional?

**VI.   Balancing of the Kind Defendants Suggest is Inappropriate in a Voting Rights Case, But Any Burden on Defendants is Minimal Anyway.**

In the first instance, balancing of various burdens is not traditionally part of how courts analyze injunctions in cases of this kind.  While, of course, it remains part of the test, because of the strong public interest in the right to vote, once a Constitutional violation exists, *some* form of injunction is all but automatic.  *See generally,* Plaintiffs' Moving Memorandum (ECF No. 13-1) at 21-22.

Various of the Defendants also exaggerate the difficulty of accepting electronically transmitted ballots on short notice.  Plaintiffs are suggesting not that Defendants develop or purchase sophisticated software, but simply use an existing fax machine or set up a special email account on an existing computer—and Plaintiffs' witnesses further explain how these procedures are safe (in fact, have no different or greater risk than is associated with paper ballots) and are already utilized by numerous other states.  Given the slight amount of work and of risk involved, the burden on the Defendants of the issuance of a preliminary injunction is minimal – Defendants' assertions to the contrary notwithstanding.  *Curling v. Raffensperger,* 2020 U.S. Dist. LEXIS 177731, *77-78 (ND Ga. 2020) ("The Court is not persuaded by Defendants' assertions that the relief requested by Plaintiffs would be too burdensome to implement in advance of the November elections. Provision of the updated information in electronic format to each county election superintendent with directions that they print and distribute the paper backup to each precinct would only impose a minimal burden on Defendants").

Indeed, fourteen years ago, a California court rejected a challenge to the constitutionality

of a provision of state law authorizing Overseas Americans to vote by fax.  "Section 3103.5 initially broadens rather than burdens voting rights because it anticipates that, if fax voting is not allowed, the voter will not be able to vote at all.  Additionally, the state's regulatory interest in requiring the oath [waiving privacy] is clear. As argued by the Secretary, the section 3103.5 oath assures among other things that (inadvertent) disclosure of the ballot during the fax process does not subject the vote to disqualification (adding a level of uncertainty to the election process).  We reject the [argument that] section 3103.5 is overbroad because the risk of inadvertent disclosure while placing a fax ballot in a security envelope is no greater than the risk that occurs when any absentee ballot is removed from the security envelope." *Bridgeman v. McPherson,* 141 Cal. App. 4th 277, 288 (Court of Appeal Ca. 2006), *rev. denied*, 2006 Cal. LEXIS 11490 (2006).

Defendants should not be heard to argue that email or fax voting cannot or should not be implemented, at  a time in history when everything else which used to be done on paper is done electronically, including paying bills and filing court documents, and legal requirements for the use of paper are falling by the wayside as "archaic."  *Keller v. Pfizer, Inc.*, 2018 U.S. Dist. LEXIS 191174, *8 (MD Pa. 2018) ("Plaintiff's argument that she should not be bound by the arbitration agreement simply because she did not sign a physical paper contract is as archaic today as the notion that James Joyce is unlawfully obscene").  And, as the Court knows very well, this historical trend has been – because of the serious need for civic services provided digitally – accelerated by the COVID-19 pandemic.  *See, e.g., Johnson v. City of New York (In re Coronavirus/COVID-19 Pandemic),* 2020 U.S. Dist. LEXIS 58729, *16 (SDNY 2020) (*Pro se* party asked to certify "that I will no longer receive paper copies of case filings").

Finally, and perhaps most importantly, any burden on Defendants can be mitigated by limiting or otherwise cabining the relief granted.  "It is well established … that a federal district

11

court has wide discretion to fashion appropriate injunctive relief in a particular case." *Richmond Tenants Org., Inc. v. Kemp*, 956 F.2d 1300, 1308 (4th Cir. 1992); *see also Lemon v. Kurtzman*, 411 U.S. 192, 200 (1973) ("[E]quitable remedies are a special blend of what is necessary, what is fair, and what is workable."); *Trump v. Int'l Refugee Assist. Project*, 137 S. Ct. 2080, 2087 (2017) (per curiam) ("Crafting a preliminary injunction is an exercise of discretion and judgment.").

Thus – as applied here and to the *Purcell*-adjacent issues as well – the Court can tailor any relief away from any concern Defendants have sufficiently identified. The Court might, if it finds that the administrative burden of requiring Defendants to distribute electronic versions of ballots and receive them by email as well would be too steep, only direct Defendants to accept digital versions of the Federal Write-In Absentee Ballot ("FWAB") using DoD fax. The FWAB exists in a pre-existing form that all States already must accept when mailed.[3] And the Department of Defense provides a coversheet with a privacy waiver already written for fax use. Thus, the sole change if the Court Orders any Defendant to accept the FWAB by DOD fax is that those States would need to set up a physical (or digital) fax machine to print ballots passed along by the Department of Defense.[4] That burden – particularly compared to the importance of the right an injunction would protect – is truly minimal.

---

[3] The form for that ballot is available here: https://www.fvap.gov/uploads/FVAP/Forms/fwab.pdf

[4] To that end, Federal law already sets out how election officials should handle the circumstances in which they receive both an FWAB and a completed State, pre-printed ballot.

12

## **CONCLUSION**

For the reasons above, the Plaintiffs respectfully request the Court grant their motion for injunctive relief.

Respectfully submitted,

/s/
_____

Jonathan Wallace, *of counsel*
J. Remy Green
**COHEN&GREEN P.L.L.C.**
1639 Centre Street, Suite 216
Ridgewood, New York 11385
(929) 888.9480 (telephone)
(929) 888.9457 (facsimile)
remy@femmelaw.com

13